UNITED STATES of America, Plaintiff-Appellant,

v.

CITIZENS AND SOUTHERN NATIONAL BANK, Defendant-Appellee.

UNITED STATES of America, Plaintiff-Appellant,

v.

CITIZENS AND SOUTHERN NATIONAL BANK, Defendant-Appellee.

Nos. 75–2549, 75–3571.

United States Court of Appeals, Fifth Circuit.

Sept. 15, 1976.

Ronald T. Knight, U. S. Atty., John D. Carey, Asst. U. S. Atty., Macon, Ga., R. Jackson B. Smith, Jr., U. S. Atty., Edmund A. Booth, Jr., Asst. U. S. Atty., Augusta, Ga., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Chief, Appellate Section, Elmer J. Kelsey, Murray S. Horwitz, Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

William M. Fulcher, Augusta, Ga., E. S. Sell, Jr., Macon, Ga., for defendant-appellee.

Before WISDOM, GODBOLD and LIVELY,* Circuit Judges.

LIVELY, Circuit Judge.

In these two cases the government appeals from judgments in favor of banks which had refused to pay to the Internal Revenue Service the balances in bank accounts upon which levies were made for federal taxes previously assessed. In each instance the bank contended that the depositor-taxpayer in whose name the account stood had no property or rights to property in the account either at the time of the assessment of taxes or the time of the levy. In each case the government brought suit to enforce the levy, and the district courts, on somewhat different reasoning, entered judgments for the banks (separate offices of Citizens and Southern).

Section 6321 of the Internal Revenue Code of 1954 (26 U.S.C. § 6321) creates a lien in favor of the United States "upon all property and rights to property, whether real or personal, belonging to  .  .  ." a person liable for any tax who has not paid it after demand. Section 6331(a) of the Code (26 U.S.C. § 6331(a)) gives to the Secretary of the Treasury or his delegate authority "to collect such tax  .  .  .  by levy upon all property and rights to property  .  .  .  belonging to such person or on which there is a lien provided in this chapter for the payment of such tax."

The facts in both cases were stipulated. In No. 2549 the Internal Revenue Service (IRS) made an assessment for unpaid wagering excise taxes against Robert W. Best, a customer of Citizens and Southern National Bank (the bank), on May 2, 1973. At noon on May 3, 1973, when the checking

* Of the Sixth Circuit, sitting by designation.

account[1] of Best reflected a credit balance in excess of $57,000, officers of the bank determined that the bank was "insecure" with respect to indebtedness of Best to the bank in excess of $60,000 and determined to take all reasonable steps to protect the bank. At 3:05 p. m., May 3, 1973 an agent of IRS served a notice of levy directing the bank to surrender to the government the balance in the Best account. On May 4, 1973, the bank wrote Best that as of that date it had applied the balance in his account to his outstanding indebtedness to the bank. On May 8, 1973 the bank actually made the transfer entries, charging the Best account and crediting the Best notes.

Prior to the time of both the assessment and the levy Best had executed several promissory notes to the bank, each of which contained the following language:

> To secure the payment of this Note and all other indebtedness or liabilities of the undersigned to Holder, however and whenever incurred or evidenced, whether direct or indirect, absolute or contingent, or due or to become due (hereafter with this Note, collectively called "Liabilities"), undersigned transfers and conveys to Holder any and all balances, credits, deposits, accounts, items and monies of the undersigned now or hereafter with the Holder, and the undersigned agrees that the Holder shall have a lien upon, security title to and a security interest in all property of the undersigned of every kind and description now or hereafter in the possession or control of the Holder for any reason, including all dividends and distributions on or other rights in connection therewith.

> In the event of nonpayment when due of any amount payable on any Liabilities, or if the Holder shall feel insecure for any reason whatsoever (1) any and all Liabilities may, at the option of Holder and without demand or notice of any kind be declared and thereupon immediately shall become due and payable, (2) the Holder may exercise from time to time

any of the rights and remedies available to Holder under the Uniform Commercial Code as in effect at that time in Georgia, or otherwise available to Holder and (3) the Holder may, at any time, without demand or notice of any kind, appropriate and apply toward the payment of such Liabilities, and in such order of application as the Holder may from time to time elect, any balances, credits, deposits, accounts, items and monies of the undersigned with the Holder.

The "personal checking account signature form" which Best signed when the checking account was opened contained the following language:

> Should Bank receive any process, summons, order, injunction, execution, distraint, levy, lien, or notice, "Process," which in Bank's opinion affects this deposit, Bank may, at its option and without liability, thereupon refuse to honor orders to pay or withdraw sums from this account and may either hold the balance herein until Process is disposed of to Bank's satisfaction, or pay the balance over to the source of the Process.

> \*   \*   \*   \*   \*   \*

> To secure any and all indebtedness and liability of (either or both) Depositors to Bank, however and whenever incurred or evidenced, whether direct or indirect, absolute or contingent, due, or to become due, Depositors (jointly and severally) hereby transfer and convey to Bank all balances, credits, deposits, monies and items now or hereafter in this account and Bank is authorized at any time to charge such indebtedness or liability against this account, whether or not the same is then due, and Bank shall not be liable for dishonoring items where the making of such a charge results in there being insufficient funds in this account to honor such items.

The district court held that under Georgia law the relationship of a depositor to a bank is one of creditor and debtor and that funds which are deposited are transformed

---

1. Best actually had several accounts, but the terms of the agreement with the bank were substantially the same on all, and a single account will be referred to for convenience.

into a chose in action. The district Court further held that in Georgia a chose in action is property or rights to property within the meaning of 26 U.S.C. § 6321. However, the court entered judgment for the bank upon finding that, under Georgia law, the language quoted herein from the promissory note constituted an assignment of Best's chose in action as collateral security for the debts evidenced by these promissory notes and operated as a valid assignment of all Best's rights as creditor of the Bank, existing by reason of his deposits, until the notes were paid. *See Macon National Bank v. Smith,* 170 Ga. 332, 338, 153 S.E. 4 (1930). Thus, C & S was not in possession of property or rights to property of the taxpayer at the time it received notice of the tax levy. For this reason, it cannot be held liable under section 6332(c) for its failure to turn over the funds deposited in Best's account.

In a footnote the district court quoted the assignment language from the signature form and stated that it granted "similar contract rights" to the bank.

The taxpayer in No. 3571 is B&G Wrecker (B&G) which borrowed from the bank and opened a checking account on March 20, 1968. The collateral installment note which B&G executed provided that

> . . . the Holder may, at any time, without demand or notice of any kind, appropriate and apply toward the payment of such of the Liabilities, and in such order of application, as the Holder may from time to time elect, any balances, credits, deposits, accounts, items or monies of the undersigned with the Holder.

B&G also executed a "deposit agreement" which contained language substantially identical to that quoted from the personal checking account signature form in No. 2549. In addition B&G gave the bank other collateral for the loan.

On June 10, 1969 IRS made an assessment of taxes against B&G and on June 13th a tax lien was filed in the proper recorder's office. On June 23, 1969 a notice of levy with respect to the B&G account

was served on the bank. Immediately thereafter the bank made a setoff, crediting the B&G note for the full amount of the balance then carried in its account.

The district court held that under Georgia law when a person makes a general deposit in a bank, title to the money immediately passes to the bank and "the depositor simply has a claim against the Bank, which claim is not considered 'property' or a 'right to property.' " The court further held that since B&G's indebtedness to the bank was greater than the sum on deposit at the time of the levy "B&G had no claim of any nature which it could have successfully asserted against the Bank . . . ." Relying on *United States v. Bank of Shelby,* 68 F.2d 538 (5th Cir. 1934), the district court stated,

> . . . since the Government's lien rights are derivative of those of the depositor, the Government takes subject to the defenses and equities affecting the depositor, so that even if the depositor has a claim, if it is not a claim which could have been maintained successfully by him, the Government is in no better position.

The court reasoned that the bank had both common law and statutory rights of setoff "and further, that this set-off could be made by the Bank either before it had knowledge of the Government's tax lien or after it became aware of it." The court concluded that the bank had "a contractual lien and security interest in the deposit which was created by the instruments taken by the Bank at the time the account was opened by the depositor." The district court found that the quoted language in the deposit agreement was a "specific transfer and conveyance of bank deposits as security for the loan by the Bank to B&G."

Our approach to the issues raised by these appeals has been chartered by the Supreme Court. In *Aquilino v. United States,* 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960), the Court wrote:

> The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and

to what extent the taxpayer had "property" or "rights to property" to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property . . . sought to be reached by the statute." *Morgan v. Commissioner*, 309 U.S. 78, 82, 60 S.Ct. 424, 426, 84 L.Ed. 585. Thus, as we held only two Terms ago, Section 3670 "creates no property rights but merely attaches consequences, federally defined, to rights created under state law . . . ." *United States v. Bess*, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135. However, once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's "property" or "rights to property." (footnotes and citations omitted).

Thus we look first to the law of Georgia to determine whether Best and B&G had property or rights to property in their respective bank accounts at the time the government claims its tax liens attached.

■ It is settled law in Georgia that a person who places money in a bank on general deposit loses title to the money and becomes a creditor of the bank. *McGregor v. Battle*, 128 Ga. 577, 58 S.E. 28, 29 (1907). The funds which are deposited are transformed into a chose in action. *Macon National Bank v. Smith*, 170 Ga. 332, 153 S.E. 4, 6–7 (1930); *Ricks v. Broyles*, 78 Ga. 610, 3 S.E. 772, 773 (1887). This court stated in *Broday v. United States*, 455 F.2d 1097, 1099 (1972), ". . . once it has been determined under state law that the taxpayer owns property or rights to property, federal law is controlling for the purpose of determining whether a lien will attach to such property or rights to property." (citation omitted). Thus, having determined that a depositor in a Georgia bank is vested with a chose in action, we look to federal law to determine whether a chose in action

is property or rights to property under §§ 6321 and 6331. In *United States v. Hubbell*, 323 F.2d 197, 200 (5th Cir. 1963), after noting that "State law controls in determining the nature of the legal interest . . . ." of one against whom a tax lien is asserted, ". . . . but federal law controls the consequences attaching thereto . . . ," the court held that a chose in action is subject to levy as "property" or "right to property." *See also United States v. Metropolitan Life Insurance Co.*, 130 F.2d 149 (2d Cir. 1942); *United States v. Cohen*, 271 F.Supp. 709 (S.D.Fla.1967).

The bank in No. 2549 argues that the levy in that case was ineffective because (1) Best had conveyed to the bank "a security interest in his legal and equitable rights to the funds on deposit," (2) that feeling itself insecure, the bank had determined to apply Best's balance against his indebtedness prior to the service of notice of levy and had effective control over the Best account until appropriate entries could be made and (3) that even if Best had property or rights to property, the security interest of the bank was superior to the government lien. Principal reliance is placed on *Macon National Bank v. Smith*, supra, and *Georgia Bank & Trust Co. v. Hadarits*, 221 Ga. 125, 143 S.E.2d 627 (1965). In No. 3571 the chief argument of the bank is that where there are mutual debts between parties the claim of a delinquent debtor who owes more than he is owed is extinguished. Thus it is contended that B&G had no interest in the balance on deposit in its account, because the larger claim of the bank against him left him with no enforceable claim against the bank. *Meriwether v. Bird*, 9 Ga. 594 (1851), *Skrine v. Simmons*, 36 Ga. 402 (1861), and *Taylor v. Jordan*, 57 Ga.App. 285, 195 S.E. 215 (1938), are cited in support of this position.

Although the Supreme Court of Georgia held in *Macon National Bank*, supra, that a bank depositor retains a chose in action, it further found that the chose in action had been assigned to the bank as collateral for a debt which exceeded the balance on deposit. The bank as transferee was held entitled to

a "preference" with respect to the balance in the depositor's account as against the claim of a creditor who served a garnishment subsequent to the assignment. In *Georgia Bank & Trust Co. v. Hadarits,* supra, a bank to which a depositor had assigned all balances in his account as security for a note was held to have been "invested with a lien" upon all deposits of the maker of the note. The court further held that the bank did not receive a new benefit when it set off the depositor's account against his note and that the right of setoff was not lost by the payment of other checks drawn on the account after the assignment to the bank took place.

█ The question of whether an assignment which is written to operate in the future divests the assignor of all rights in the property assigned has been answered differently by various courts, depending on the circumstances and applicable state law. *Compare United States v. Trigg,* 465 F.2d 1264 (8th Cir. 1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973), *with Monroe Banking & Trust Co. v. Allen,* 286 F.Supp. 201 (N.D.Miss.1968). The statements in the opinions of the Supreme Court of Georgia that the assignee banks are entitled to a "preference" or have a "lien" on the borrower's account are inconsistent with the arguments of the banks in this case that after the assignments the borrower-depositors had no property interests in their accounts. It would be anomalous to hold one entitled to a preference with respect to, or a lien upon, property of which he was the sole and absolute owner. The alternative finding of the district court in No. 3571 that "the Bank in this case had a contractual lien and security interest in the deposit . . ." is likewise inconsistent with the court's finding that the assignment from the depositor to the bank divested B&G of all property and rights to property in the deposit. If the bank was the sole owner of the deposit, it could not have a lien or security interest in it. If indeed the assignments created only rights to a preference or liens, then some property or rights to property remained in the deposi-

tors and the issue between the parties is one of priority of liens. However, the claim of a prior lien may not be interposed as a defense to an action to enforce a tax levy. *Commonwealth Bank v. United States,* 115 F.2d 327 (6th Cir. 1940); *United States v. Trans-World Bank,* 382 F.Supp. 1100, 1105 (C.D.Cal.1974). The banks may litigate the priority of liens issue in an action under 26 U.S.C. § 7426. Federal law is applied in determining property and such considerations as the chronology of the various steps taken by each of the parties and the "choateness" of the assignments are relevant. *See United States v. Pioneer American Insurance Co.,* 374 U.S. 84, 87, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); *Hammes v. Tucson Newspapers, Inc.* 324 F.2d 101, 103 (9th Cir. 1963).

█ Aside from the assignments the banks contend they were entitled to the benefit of a setoff of the balances in the Best and B&G accounts against the indebtedness of each depositor. An examination of the provisions of the notes relating to setoff reveals that they speak of some positive act by the banks to effect setoff. In both instances the notes provide "the Holder may . . . appropriate and apply" the balances, credits, deposits and accounts of the borrower to his indebtedness. In No. 2549 the bank did not attempt to apply the Best balance to his debts until May 4, 1973, the day following service of notice of levy. In No. 3571 the setoff was made "immediately after" the notice of levy was served. Since the contractual right of setoff required some discrete act by the banks and neither bank in the present cases performed such an act until after service of notice of the levy, the depositors retained property interests in the accounts subject to levy, unless these interests had been extinguished by operation of law.

We again look to state law to determine whether the existence of an indebtedness to the bank which exceeds the balance in a depositor's account divests that depositor of all property and rights to property in the account. Whatever may be the law in oth-

er states,[2] the law of Georgia does not seem to provide for an automatic setoff between bank and depositor. In *Taylor v. Jordan*, 57 Ga.App. 285, 195 S.E. 215, 216 (1938), the court stated that "[m]utual demands extinguish each other by operation of law, without waiting for any act of the parties." Neither the *Taylor* case nor the two older Georgia cases cited in the briefs involved mutual debts of a bank and its depositor who was permitted to withdraw from his account after the mutual obligations came into existence. No Georgia case has been found which holds that a setoff by operation of law occurs where indebtedness of a bank depositor exceeds the balance of his deposits. On the other hand, Georgia cases involving the right of banks to set off debts against depositors' accounts uniformly indicate the requirement of some positive act. *E. g.*, "The bank's *action* . . ." (*Hadarits*, supra, 143 S.E.2d at 629); "When a bank which holds a note against one of its depositors *charges it up* . . ." (*Davenport v. State Banking Co.*, 126 Ga. 136, 54 S.E. 977 (1906)); ". . . having *exercised* this right . . ." [to set off] (*Caye v. Milledgeville Banking Co.*, 91 Ga. App. 664, 86 S.E.2d 717 (1955)). (emphasis added in each quotation). Moreover, the Uniform Commercial Code provision for setoff by banks, effective in Georgia since 1962, uses language connoting the necessity for some positive act on the part of the bank. "Any . . . set-off *exercised* by a payor bank . . ." (emphasis added) Ga.Code § 109A–4–303(1). *Compare Baker v. National City Bank of Cleveland*, 511 F.2d 1016 (6th Cir. 1975).

In *United States v. First National Bank of Arizona*, 348 F.Supp. 388, 389 (D.Ariz. 1970), *aff'd per curiam*, 458 F.2d 513 (9th Cir. 1972), the District Judge wrote—

> Until a bank has notified its depositor and then *exercised* its right of setoff, the depositor is free to withdraw from his account and it is inconceivable that Congress, by virtue of 26 U.S.C. § 6323, in-

tended to prohibit the Government from levying on that which is plainly accessible to the delinquent taxpayer-depositor. (emphasis in original).

A similar view was expressed by the Second Circuit in *United States v. Sterling National Bank & Trust Co. of N.Y.*, 494 F.2d 919, 921–22 (1974).

We do not believe that *United States v. Bank of Shelby*, 68 F.2d 538 (5th Cir. 1934), relied on by the banks in the present case leads to a contrary conclusion. In *Bank of Shelby* the depositor was insolvent and the bank account upon which the government sought to levy constituted the balance of proceeds of the very loan which the bank offset. The court held that ". . . where the mutual obligations have grown out of the same transaction, insolvency on the one hand justifies the set-off of the debt due upon the other" (quoting from *Scott v. Armstrong*, 146 U.S. 499, 507, 13 S.Ct. 148, 36 L.Ed. 1059 (1892)). *Id.* at 539.

We conclude that the government was entitled to judgments enforcing its levies in both cases before us because Best and B&G had property or rights to property in their respective bank accounts. As has been noted, both banks have argued that even if the depositors had property or rights to property in the accounts upon which levies were made, the banks had liens thereon which were superior to those of the government. The priority of liens is not before the court and we express no views on this issue.

In No. 2549 the government sought a 50 per cent penalty as provided in 26 U.S.C. § 6332(c)(2) for failure of the bank to surrender property of the taxpayer "without reasonable cause." The district court did not reach this issue, but we conclude that there was a bona fide dispute as to whether the deposit represented property or rights to property of Best and that the penalty provision is not applicable in this case.

---

**2.** *See United States v. National Bank of Commerce*, 246 F.Supp. 597 (E.D.La.1965), for discussion of the statutory provision for "compensation." *But see United States v. First Nation-* *al Bank of Commerce* (No. 72–247, E.D.La. 1973), *aff'd per curiam*, 493 F.2d 1228 (5th Cir. 1974).

The judgment in each case is reversed and the cases are remanded to the district courts for entry of judgments for the government.