641 F.2d 205
 81-1 USTC P 9305
 J. A. WYNNE CO., INC., a Florida Corporation, and Ohio
Casualty Insurance Co., an Ohio Corporation, Plaintiffs,
J. A. Wynne Co., Inc., a Florida Corporation, Plaintiff-Appellee,
v.
R. D. PHILLIPS CONSTRUCTION CO., INC., a Florida Corporation
et al., Defendants,
United States of America and Internal Revenue Service,
Defendants-Appellants.
 No. 79-2362
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 March 30, 1981.
 M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Karl Schmeidler, Attys., William S. Estabrook, III, Tax Div., Dept. of Justice, Washington, D. C., for defendants-appellants.
 Gray, Adams, Harris & Robinson, Gordon H. Harris, Orlando, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before HILL, GARZA and THOMAS A. CLARK, Circuit Judges.
 PER CURIAM:
 
 
 1
 The construction of a combination service station and convenience food store in Orange County, Florida, led to this action under the Wrongful Levy Statute of the Internal Revenue Code.[1] The United States of America appeals from the district court's order granting summary judgment in favor of the plaintiff-appellee, J. A. Wynne Co., Inc. ("Wynne"). We reverse.
 
 
 2
 Tenneco Oil Company ("Tenneco"), as owner and architect, contracted with Wynne, a general contractor, on April 1, 1976, for the construction of a Tenneco combination convenience food store and service station. The contract required the general contractor to secure a performance and payment bond.
 
 
 3
 Wynne entered into a subcontract with the R. D. Phillips Construction Co., Inc. ("Phillips"), to perform the "site work" portions of the project. Under the terms of the subcontract, Phillips agreed to "clear and strip" the property, perform all paving work, build curbs and catch basins, and provide fill dirt. Paragraph 8 of the subcontract provided that Phillips should receive monthly progress payments from Wynne based on invoices the subcontractor was obligated to submit to the general contractor. Paragraph 6 of the subcontract provided in pertinent part:
 
 
 4
 Subcontractor covenants and agrees with Owner that Subcontractor will promptly pay all obligations for work, labor, services and/or materials incurred by the Subcontractor in the doing of the work required by the terms of this Subcontract before any of such obligations become in default. If a person claiming under, by, through, or against the Subcontractor gives the Contractor or the Owner a cautionary notice, Contractor shall have the right to withhold from the progress payments hereafter referred to so much of them as in the judgment of the Contractor and approved by the Architects, is proper.
 
 
 5
 To assist in the performance of its subcontract with Wynne, Phillips itself contracted with a subcontractor and a materialman to perform the paving work for the Tenneco project. Keene Hauling, Inc. ("Keene") was to supply and deliver the limerock paving material. Southern Paving Company ("Southern") contracted with Phillips to perform the asphalt paving work. Before furnishing materials under its contract with Phillips, Keene Hauling sent a cautionary notice to Wynne on July 12, 1976, incorrectly listing Wynne as owner of the project. This cautionary notice was filed pursuant to the Florida Mechanics' Lien Law, Fla.Stat. § 713.01, et seq.[2]
 
 
 6
 Keene began hauling limerock to the construction site on July 13th and completed its performance one week later on July 20th. Two days later, on July 22nd, Southern Paving began the asphalt paving portion of the construction project. The paving work was completed on August 2nd at which time Southern Paving also filed a cautionary notice. However, unlike Keene's notice, Southern Paving's cautionary notice was sent to Tenneco as the project owner.
 
 
 7
 Prior to June 30th, Wynne had paid Phillips $10,000 in progress payments for the clearing of the property, fill dirt, and the construction of the curbing and catch basins. On July 23rd, in an attempt to satisfy Phillips' unpaid tax assessments and penalties, the Internal Revenue Service served Wynne with a notice of levy in the amount of $10,675.54. The IRS claimed that Wynne should pay this amount out of the progress payments which it had not yet made to subcontractor-taxpayer Phillips. Wynne received an invoice from Phillips on July 26th requesting a progress payment of $7,809.50. On September 8, 1976, Wynne satisfied the IRS levy and at the same time paid Phillips $3,363.96 which represented the balance due under the contract.
 
 
 8
 Thereafter, when Phillips failed to pay Keene and Southern Paving for their paving work on the Tenneco project, both sub-subcontractors filed mechanics liens on the Tenneco construction site; Keene on October 14th and Southern Paving on October 29th.
 
 
 9
 Having paid Phillips' IRS tax assessment and faced with the potential of double liability from having to satisfy the claims of Keene and Southern Paving, Wynne and its surety, Ohio Casualty Insurance Co., transferred the liens to bonds pursuant to Fla.Stat. § 713.24 and then filed this action in district court claiming that the IRS's levy against Wynne had been wrongful under 26 U.S.C. § 7426(a).
 
 
 10
 The district court agreed with Wynne that the IRS levy had been wrongful.[3] The court held that the money withheld by Wynne was not property or a right to property belonging to taxpayer Phillips because paragraph 6 of the Wynne-Phillips subcontract entitled Wynne to withhold progress payments upon the filing of a cautionary notice by a sub-subcontractor. Thus, according to the district court, Keene's cautionary notice to Wynne on July 12 gave Wynne "a kind of contractual set-off against Phillips" which was not subject to an IRS levy. 468 F.Supp. at 7.
 
 
 11
 On appeal the government contends that the taxpayer-Phillips had sufficient property rights in the funds held by Wynne for the federal tax lien to attach. The government takes issue with the district court's conclusion that Wynne effectively exercised the contractual power to withhold progress payments once it had received a cautionary notice from Keene. The appellant directs the court's attention to the fact that although Wynne contends it properly withheld the progress payment from Phillips in order to protect itself from possible claims by the sub-subcontractors, Wynne nevertheless proceeded to pay $10,675.54 to the United States to satisfy the levy and $3,363.96 to the taxpayer-Phillips.
 
 
 12
 Upon the failure of a person to pay his federal taxes after the government's demand to do so, Section 6321 of the Internal Revenue Code of 1954, 26 U.S.C. § 6321, creates "a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.[4] The Code also provides that if the person does not pay the delinquent taxes " within 10 days after notice and demand, it shall be lawful for the Secretary (of the Treasury) or his delegate to collect such tax ... by levy upon all property and rights to property ... belonging to such person or on which there is a lien provided in this chapter for the payment of such tax." 26 U.S.C. § 6331(a). However, Section 7426(a)(1) of the Code, 26 U.S.C. § 7426(a)(1), provides that any person other than the taxpayer may file a civil suit against the United States if that person "claims an interest in or lien on such property and that such property was wrongfully levied upon."
 
 
 13
 The threshold question in this case, just as in any case involving the federal government's claim of a tax lien, is to what extent the delinquent taxpayer had "property and rights to property" under 26 U.S.C. § 6321. This court has previously considered the relationship of federal and state law in determining to what property a federal tax lien can attach. See Randall v. H. Nakashima & Co., Ltd., 542 F.2d 270 (5th Cir. 1976); United States v. Citizens and Southern National Bank, 538 F.2d 1101 (5th Cir. 1976); and Broday v. United States, 455 F.2d 1097 (5th Cir. 1972). The opinions in these cases have discussed the necessity of applying state law in determining the parameters of the concept of "ownership or rights in property" that suffices to authorize levy in this type of litigation. Only Citizens and Southern National Bank requires our close comparison here.
 
 
 14
 In Citizens and Southern National Bank, supra, the government brought suit against a commercial bank to enforce a levy on two depositors-taxpayers' bank accounts. Faced with the question of whether the taxpayers "had property or rights to property in their respective bank accounts at the time the government claims its tax liens attached," 538 F.2d at 1105, this court looked to the Supreme Court's opinion in Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960), for guidance:
 
 
 15
 The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had "property" or "rights to property" to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property ... sought to be reached by the statute." Morgan v. Commissioner, 309 U.S. 78, 82, 60 S.Ct. 424, 426, 84 L.Ed. 585. Thus, as we held only two Terms ago, Section 3670 "creates no property rights but merely attaches consequences, federally defined, to rights created under state law ...." United States v. Bess, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135. However, once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's "property" or "rights to property." (footnotes and citations omitted).
 
 
 16
 United States v. Citizens and Southern National Bank, 538 F.2d at 1104-05, quoting Aquilino v. United States, 363 U.S. 509, 512-14, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). Having examined Georgia law in that case we wrote that "having determined that a depositor in a Georgia bank is vested with a chose in action, we look to federal law to determine whether a chose in action is property or rights to property under §§ 6321 and 6331." 538 F.2d at 1105.
 
 
 17
 We conclude from our review of the cases discussed above that in the circumstances of the present case, our basic task is to determine whether the taxpayer-Phillips had a property interest, under Florida law, in the funds held by Wynne, the general contractor, and, if so, whether Wynne in turn had a claim by way of setoff that would give it a lien against the fund that would be superior to that of the IRS levy. In its consideration of this issue below, the district court concluded that at the time the IRS served Wynne with the notice of levy, the taxpayer, Phillips, "had no entitlement to the progress payments." 468 F.Supp. at 9. Furthermore, the district court found that,
 
 
 18
 Wynne had exercised its contractual right under paragraph 6 to withhold the funds from Phillips at the time of the levy. Therefore, since the right to withhold had been exercised by Wynne, Phillips had no "right to property" on which the IRS could levy unless or until it satisfied Wynne that the sub-subcontractors would be paid and that Wynne would not be subjected to double liability.
 
 
 19
 Id. (emphasis in original). We cannot agree with the district court's conclusion that Phillips had no property rights in the funds paid by Wynne to the IRS.
 
 
 20
 First, although under certain conditions Wynne did have a valid contractual right to withhold part or all of Phillips' progress payments, there is nothing in the record of this case to support the district court's conclusion that Wynne had effectively exercised this contractual right before July 23rd, the date of Wynne's receipt of the IRS notice of levy. Apparently, the district court based its conclusion on the fact that the materialman Keene had sent Wynne a cautionary notice on July 12th combined with Wynne's unexplained retention of the funds until it paid both the IRS and Phillips on September 8th.
 
 
 21
 It is noteworthy that when Wynne received the IRS notice of levy on July 23rd, only three days had passed since Keene Hauling had completed its performance under the contract with Phillips. Southern Paving had begun its paving work the day before the levy, on July 22nd, and did not complete its performance until August 2nd. At the time of the IRS levy, apparently neither sub-subcontractor had been refused payment by Phillips, and there is no evidence in the record that Phillips was in default with respect to any of its agreements involving the Tenneco project.
 
 
 22
 Under the terms of paragraph 8 of the Wynne-Phillips subcontract, the subcontractor was entitled to progress payments from the general contractor on the "25th day of each month during the progress of the work." However, paragraph 6 of the same subcontract gave Wynne the contractual "right to withhold from the progress payments ... so much of them as in the judgment of the Contractor and approved by the Architects, is proper." Wynne has made no showing that it had at any time, much less after July 12th but before July 23rd, elected to exercise its contractual right to withhold the progress payment from Phillips. There is no evidence that Wynne ever attempted to gain the necessary approval of Tenneco, the owner-architect, to withhold the funds. Furthermore, there is no indication that the general contractor ever notified Phillips or any of the other parties with an interest in this matter that Wynne had chosen to avail itself of the self-help remedy in paragraph 6. Wynne does not offer any theory other than the procedure of paragraph 6 of the subcontract which would give it the authority to withhold the progress payment from Phillips. Certainly, the Florida Mechanics' Lien Law, supra, does not give a general contractor the unfettered right to withhold progress payments from a subcontractor once a cautionary notice is received.
 
 
 23
 This court has held previously that although a party challenging an IRS tax levy may have had a contractual right to the property levied upon, the party claiming such right must take some affirmative action to exercise that right prior to the receipt of the government's notice of levy. United States v. Citizens and Southern National Bank, 538 F.2d 1101 (5th Cir. 1976). In Citizens and Southern National Bank, the IRS had served notices of levy on two banks directing them to surrender to the government the balances in two checking accounts. In both instances, the IRS notice was served on the bank shortly before the bank took steps to set off against the account for indebtedness the bank deemed to be "insecure." Considering the banks' claim that the taxpayers had no property rights under state law in the checking accounts because the banks had a contractual right of setoff, we noted as to the contractual right claim that "some discrete act by the banks" was required to effectuate the setoffs and that since "neither bank in the present cases performed such an act until after service of notice of the levy, the depositors retained property interests in the accounts subject to levy, unless these interests had been extinguished by operation of law." 538 F.2d at 1106. Here, since there was no showing by Wynne that it had exercised its contractual right before the notice of the tax levy was received by it on July 23rd, Phillips still possessed a contractual right to the progress payment under paragraph 8 of the subcontract. Phillips' contractual right was an adequate ownership interest in the fund to which the IRS levy could attach.
 
 
 24
 Wynne's argument that it may be subjected to double liability by having to pay both Keene and Southern Paving is not persuasive. If indeed Wynne was concerned about Phillips' ability to pay the two sub-subcontractors and was withholding the progress payment to ensure their payment, why would Wynne then proceed to pay Phillips the balance of the fund once the IRS levy had been satisfied? If Wynne had any legitimate claim to the fund, its September payment to Phillips effectively waived any right the general contractor may have had under the contract to withhold progress payments from Phillips.
 
 
 25
 Accordingly, the federal tax lien did attach to the funds held by Wynne. The judgment of the district court is REVERSED.
 
 
 
 [1]
 26 U.S.C. § 7426(a)(1) provides:
 If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary or his delegate.
 
 
 [2]
 Fla.Stat. § 713.06(2)(a) (1967) (amended 1977 and 1980) provided as follows:
 All lienors under this section, except laborers, as a prerequisite to perfecting a lien under this chapter and recording a claim of lien, shall be required to serve a notice on the owner setting forth the lienor's name and address, a description sufficient for identification of the real property, and the nature of the services or materials furnished or to be furnished. This notice must be served before commencing or not later than forty-five days from commencing to furnish his services or materials but in any event before the date of furnishing the affidavit under subsection (3)(d)1., of this section, or abandonment, whichever shall occur first. The serving of this notice shall not dispense with recording the claim of lien. This notice shall not be deemed to constitute a lien, cloud or encumbrance on said real property nor actual nor constructive notice of any of the same.
 
 
 [3]
 See J. A. Wynne Co., Inc. v. R. D. Phillips Construction Co., 468 F.Supp. 5 (M.D.Fla.1979)
 
 
 [4]
 26 U.S.C. § 6321 provides:
 If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.