JERRY E. SMITH, Circuit Judge:
A bank named Plains Capital Corporation (“Plains Capital”) and Boardwalk Motor Sports, Limited (“Boardwalk”), appeal a judgment finding them liable for conversion of the proceeds from the sale of a car *380 that was subject to a tax lien. Boardwalk sold the car and gave the proceeds to Plains Capital to get Plains Capital to release the title, and Plains Capital applied the money to the taxpayer’s debt. The IRS attempted to obtain the proceeds by levy after Plains Capital had applied the money to the debt, so Plains Capital claimed it no longer had any of the property. The IRS sued Plains Capital and Boardwalk for conversion and failure to honor a tax levy.[1] The district court found that both were liable for conversion, but Plains Capital was not liable for failure to honor a tax levy. The district court also assigned pre- and post-judgment interest at the rate for tax cases. Because neither party is liable for conversion under Texas law, but Plains Capital is liable for failure to honor a tax levy, we reverse and remand.
I.
In 2002 and 2003, the Internal Revenue Service (“IRS”) assessed Gregory Rand’s outstanding federal income tax liabilities for 2000 through 2002. In 2003 and 2004, the IRS filed notices of federal tax liens, listing total liabilities over $3 million. In 2005, Rand obtained a $200,000 line of credit from Plains Capital, which took possession of the title to his 2005 Ferrari to secure its lien. Plains Capital was aware of the tax lien.
In June 2007, Rand agreed to sell his 2005 Ferrari as part of paying off his tax liabilities. Rand and IRS Revenue Officer Melvin Schwartz agreed that Boardwalk would sell the car. Schwartz called Plains Capital on June 29 to discuss their respective liens, but they did not reach an agreement. The IRS served a notice of levy on Boardwalk on July 2, and Schwartz told Greg Minor, Boardwalk’s manager, that the proceeds were to be delivered to the IRS.
On July 3, Rand delivered his Ferrari to Boardwalk and signed a consignment agreement that allowed Boardwalk to sell the car. Boardwalk called Schwartz and told him the car had been delivered. Schwartz specified that no proceeds should be released until the IRS and Plains Capital had agreed on how to distribute the funds, and if Boardwalk was unsure to whom to pay the proceeds, it should inter-plead the two parties.
On July 25, Boardwalk sold the vehicle for $210,454. Boardwalk contacted the IRS, but Schwartz was on vacation. On August 7, Boardwalk sent Plains Capital a check for $194,982 to pay off Plains Capital’s lien and obtain title. Boardwalk kept a commission, deducted costs, and gave the rest to the IRS, then applied the funds to Rand’s debt on August 16 and released its lien.
Schwartz claimed he learned of the Ferrari’s sale on August 20 — though Boardwalk claims he learned on August 6 — and the IRS served a final demand for payment on Boardwalk on August 21. The IRS served a notice of levy on Plains Capital on August 28 and a final demand for payment on October 18.
II.
The IRS sued Plains Capital and Boardwalk for failure to honor a federal tax levy and for tortious conversion. Following a bench trial, the court held that the IRS had perfected its interest in the car and that its lien was superior to Plains Capital’s. The court also held that applying the proceeds to Rand’s debt was conversion, but because Plains Capital had applied the proceeds before receiving the IRS’s levy, the court found Plains Capital *381 not liable for failure to honor a levy, given that it no longer possessed the proceeds. The court awarded pre-judgment and post-judgment interest against Boardwalk from August 7, 2007, and against Plains Capital from August 17, 2007, the dates on which each received the proceeds from the sale. After Plains Capital and Boardwalk’s motion for a new trial was denied, they appealed.
III.
The IRS lacked an immediate right to possession under Texas law, thereby preventing it from winning a common-law conversion claim against Boardwalk. Conversion occurs when, wrongfully and without authorization, one assumes and exercises control and dominion over the personal property of another, either inconsistently with or to the exclusion of the owner’s rights. Arthur W. Tifford, PA v. Tandem Energy Corp., 562 F.3d 699, 705 (5th Cir.2009). To succeed on a conversion claim under Texas law, the plaintiff must prove that “(1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property’s return; and (4) the defendant refused.” Id.
Conversion claims for money must meet additional requirements. “An action will lie for conversion of money when its identification is possible and there is an obligation to deliver the specific money in question or otherwise particularly treat specific money.” Hous. Nat’l Bank v. Biber, 613 S.W.2d 771, 774 (TexApp.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Specifically, “[a]ctions for conversion of money are available in Texas only where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper.” In re TXNB Internal Case, 483 F.3d 292, 308 (5th Cir.2007) (internal quotation marks omitted). Furthermore, “a party that benefits from proceeds subject to a statutory lien may be liable for conversion of such proceeds only if it has notice of the lien, then accepts and benefits from the proceeds.” Id.
The primary point of contention is whether the IRS legally possessed the property or was entitled to it. “A federal tax lien ... is not self-executing, and the IRS must take [a]ffirmative action ... to enforce collection of the unpaid taxes.” EC Term of Years Trust v. United States, 550 U.S. 429, 430-31, 127 S.Ct. 1763, 167 L.Ed.2d 729 (2007) (internal quotation marks omitted). Until the IRS takes additional action, such as serving a levy or instituting foreclosure proceedings, it does not have the right to take possession of the property. The levy gives the IRS a legal right to seize the property. 26 U.S.C. § 6331(b) (“The term ‘levy’ as used in this title includes the power of distraint and seizure by any means.”). Because the levy was served on Boardwalk before it had possession of the car, the levy was ineffective to give it possession. § 6331(b) (“[A] levy shall extend only to property possessed ... at the time thereof.”). Without a valid levy, the IRS did not have possession of the vehicle or the proceeds from its sale.
Texas cases require ownership, possession, or the right of immediate possession to prevail on a conversion claim.[2] Despite *382 numerous citations, the IRS fails to present any successful Texas conversion claim where the plaintiff neither owned nor was entitled to immediate possession of the property converted.
Recognizing it lacked an immediate right of possession, the IRS attempts to force two exceptions into Texas common law. First, it argues that the first element of conversion is satisfied by having “some character of ownership interest in the specific property converted.” Mack v. Newton, 737 F.2d 1343, 1355 (5th Cir.1984). The Mack court supported that statement with citations to multiple Texas cases. Almost every case cited, however, explicitly requires ownership, legal possession, or being entitled to possession. Even the few cases that state a potentially looser standard still require an immediate right to possession.[3] In O’Connor v. Fred M. Manning, Inc., 255 S.W.2d 277, 278 (Tex.CivApp.—Eastland 1953, writ ref'd), the court stated a generally worded standard: “In order for a purchaser to maintain an action for conversion it is necessary to allege and prove facts showing that he had, at the time of the alleged conversion, acquired some right or title to the identical goods or chattels claimed to have been converted.” But the court then rejected the conversion claim, because the contract of sale did not appear to show passing of title or possession. Despite the IRS’s contention, Texas caselaw prohibits conversion claims by parties without an immediate right to possession of the allegedly converted property.
Second, the IRS cites TXNB, 483 F.3d at 308, for the proposition that a party that benefits from proceeds subject to a statutory lien may be liable for conversion. That case does not help the IRS avoid the ownership requirement; it states that “a party that benefits from proceeds subject to a statutory lien may be liable for conversion of such proceeds only if it has notice of the lien, then accepts and benefits from the proceeds.”[4] Id. That quotation does not focus on who is able to bring a conversion suit against such a benefiting *383 party; the court discussed when a party able to sue in conversion can recover against another party because that other party benefited from converted funds. That decision does not grant every statutory lienholder the right to sue for conversion regardless of how meager a property interest it holds.
Examining the precedent supporting that misused quotation makes plain that we furnished no exception to Texas’s requirement of an immediate right to possession. In TXNB, we cited the above-quoted proposition to Home Indemnity Co. v. Pate, 814 S.W.2d 497, 498-99 (TexApp.—Dallas 1991, no writ), which, like the cases Home Indemnity in turn relied upon, concerned an insurance carrier’s subrogation lien. That type of lien provides the carrier ownership of the funds, Fort Worth Lloyds v. Haygood, 151 Tex. 149, 246 S.W.2d 865, 869 (1952), and so fails to show ownership or possession are not required. TXNB does not support a lienholder’s ability to sue for conversion without ownership or a right to immediate possession.
Moreover, although one authority states that a lienholder may generally sue for conversion even though it is not entitled to possession at the time, 15 Tex. Jur. 3d Conversion § 54, the cases cited for that do not support the IRS’s position. The only case of the three cited in that section that directly discuss a lienholder’s right to sue for conversion without possession expressly states that “ ‘[ljienholder’ in this instance refers to the party holding a lien under a security agreement and not a lien created by a statute.” Elite Towing, Inc. v. LSI Fin. Group, 985 S.W.2d 635, 644 n. 17 (TexApp.—Austin 1999, no writ).
In a similar case, a Texas court recognized that a state tax lien that did not convey a right of immediate possession cannot provide the ownership interest needed to maintain a conversion action. In ITT Commercial Finance Corp., 827 S.W.2d 6, a city taxing authority had superior liens on a debtor’s vehicles, but another corporation, which had a perfected security interest in the vehicles, repossessed and sold them. The city sued for conversion, but the court rejected the argument that the statutory lien gave the city sufficient interest to maintain the action, because without first judicially foreclosing the liens, the city had no immediate right of possessiori. Id. at 10.
To the same effect here, the IRS’s interest in the Ferrari — and the proceeds from its sale — were limited to a tax lien. As explained above, a tax lien is not self-executing, and it does not provide the IRS with an immediate right of possession until a levy is issued. Although the IRS needs to utilize only its own administrative procedures to gain a possessory interest in property subject to a tax lien — which is faster and more reliable than the judicial proceedings required of the city in ITT Commercial — the result is the same: No immediate right to possession existed at the time of the alleged conversion. Therefore, the IRS’s conversion claim cannot succeed.[5]
IV.
The IRS sent multiple levies in its attempts to collect the proceeds from the sale of Rand’s automobile: one to Board *384 walk on July 2, 2007, and one to Plains Capital on August 28, 2007. Under 26 U.S.C. § 6332, any person in possession of property subject to levy upon which a levy has been made must surrender the property to the Secretary on demand. Unfortunately, Boardwalk did not receive the Ferrari until July 3, and no new levy demanded Boardwalk surrender the property after it received the car. After Boardwalk sold the car, it distributed the proceeds to Plains Capital on August 7; Plains Capital then applied the proceeds to pay off Rand’s indebtedness on August 16. Having already applied the funds to Rand’s indebtedness, Plains Capital argues that by the August 28 levy, Plains Capital held no funds belonging to Rand.
It is well established that a tax lien attaches to a piece of property and anything that is substituted for it.[6] The IRS can follow the proceeds “wherever they can distinctly trace them.” Phelps, 421 U.S. at 335, 95 S.Ct. 1728. Therefore, once the car was sold, the tax lien attached to the proceeds of that sale, enabling them to be levied.[7] Likewise, transferring the proceeds to Plains Capital did not remove the tax lien. See Bess, 357 U.S. at 57, 78 S.Ct. 1054. Plains Capital, however, then applied the money to Rand’s indebtedness; the bank kept the proceeds and discharged the debt, declaring that now the proceeds had been dissipated. As a result, the district court found that by the time the levy had been served, the bank no longer possessed the proceeds.
Two types of property can be levied: (1) property belonging to the taxpayer and (2) property subject to a tax lien. § 6331(a). The IRS cites several cases to show that the lien continues to follow the money, so levy is appropriate.[8] These decisions rea *385 son that even if the taxpayer’s property interests are extinguished, the tax lien remains attached to the money after setoff, so a levy is effective. Plains Capital cites cases that suggest that a levy may be ineffective if served after the funds are disbursed, even if a lien had previously attached.[9] The reasoning is that offsetting the taxpayer’s balance against debts owed to the bank before service of a levy destroys the taxpayer’s interest in those funds, so the bank would not be holding any of the taxpayer’s property. When a bank takes money from the taxpayer and applies it to a debt he owes the bank, the taxpayer has no interest left in the property; his property has gone to the bank in exchange for release from his debt. But those cases fail to address that any property subject to a tax lien can be levied.
Plains Capital contends that applying the proceeds to Rand’s indebtedness dissipated the funds subject to a tax lien, so now it holds nothing to which a levy can attach. Plains Capital relies on the statutory requirement that “a levy shall extend only to property possessed and obligations existing at the time thereof.” 26 U.S.C. *386 § 6331(b). If it had already dissipated the money when the levy was served, it no longer possessed any money subject to a tax lien, so the levy would attach to nothing. We must determine whether applying the proceeds to the taxpayer’s indebtedness before the levy is served constitutes a loss of possession by the bank, rendering a later levy ineffective.
A levy is still effective when issued after a bank has offset the money against the taxpayer’s debt, because the money can still be traced to the bank’s account. A tax lien reattaches to proceeds wherever they can be distinctly traced. Although Plains Capital asserts that the money was dissipated when applied to Rand’s debt, applying the proceeds to the debt does not really dissipate the funds. A bank uses proceeds to pay off a debt just by keeping the proceeds. No dissipation of funds occurred when Plains Capital offset the proceeds against the debt Rand owed; the bank merely took the proceeds, kept them, and adjusted its records of the amount Rand owed accordingly. The proceeds are still with Plains Capital; only bookkeeping entries were made.
Contrast this with a true case of dissipating funds. Imagine that instead of depositing the money into its account, Plains Capital had taken the proceeds and used them all to buy an extravagant lunch for its employees. Liens attach to property and anything later substituted for that property, Phelps, 421 U.S. at 334-35, 95 S.Ct. 1728, so the liens attach to the food. But once the employees finish eating, there would be nothing left to which the lien could attach; all the proceeds would have been dissipated.
Plains Capital kept the money but is not refusing to recognize the proceeds as an identifiable fund. As the Tenth Circuit explained in Henshaw, 388 F.3d at 741, tracing can serve as “an equitable substitute for the impossibility of specific identification.” The proceeds are still in Plains Capital’s possession, whether it wants to think of them that way or not, and because we can trace them there, the lien still attaches to them.[10]
Because a levy can claim possession of any property subject to a tax lien, and the proceeds — having not been truly dissipated — are still subject to the lien, the levy against Plains Capital was effective. Plains Capital should be found liable for failing to honor that levy.
V.
Because we find Plains Capital liable for failure to honor a tax levy, interest accrues from the date it failed to honor the levy until the date the judgment is satisfied, at the underpayment rate in I.R.C. § 6621(a)(2). See I.R.C. § 6332(d)(1). Thus, interest will be assessed beginning on August 28, 2007.
The judgment is REVERSED, and this matter is REMANDED for proceedings as needed.

. The IRS abandoned its claim that Boardwalk had failed to honor a tax levy.

. E.g., City of Wichita Falls v. ITT Comm’l Fin. Corp., 827 S.W.2d 6, 8 (Tex.App.—Fort Worth 1992), reversed in part on other grounds, 835 S.W.2d 65 (Tex.1992) (“Either ownership, possession, or the right of immediate possession of the property to the party *382 aggrieved is a requirement for an action in conversion”); P&T Mfg. Co. v. Exch. Sav. & Loan Ass’n, 633 S.W.2d 332, 333 (Tex.App.—Dallas 1982, writ ref'd n.r.e.) ("Conversion is concerned with possession, not title .... P&T is admittedly not the owner ____ We hold that absent a judicial foreclosure P&T does not have any right to the legal possession of the cabinets and countertops. We conclude, therefore, that P&T has failed to establish a cause of action for conversion ...."); Lone Star Beer, Inc. v. Republic Nat'l Bank of Dall., 508 S.W.2d 686, 687 (Tex.Civ.App.—Dallas 1974, no writ) ("In order to recover on a theory of conversion, it is necessary ... [to] prove one of three things, that being, that it is the owner of the property converted or that it had legal possession of the property so taken or that it is entitled to possession.”).

. Some cases state the broad standard, followed by the narrow one, suggesting that despite whatever grand language is used, Texas requires at least an immediate right to possession. See Catania v. Garage De Le Paix, Inc., 542 S.W.2d 239, 241-42 (Tex. Civ.App.—Tyler 1976, writ ref'd n.r.e.) ("It is essential that the plaintiff establish some interest in the property as of the time of the alleged conversion, such as title or otherwise some right to possession .... A plaintiff who has not shown title or some other right to possession of the property allegedly converted may not maintain a suit in conversion.”).

. In addition to the legal problems with the IRS’s arguments relying on TXNB, its argument even fails against Boardwalk under its own terms. The IRS presents no evidence that Boardwalk benefited from the converted funds. No one disputes that Boardwalk was entitled to its commission, and other than that, the IRS has not identified that Boardwalk accepted or benefited from the proceeds. Boardwalk gets the commission from the sale no matter whom the money goes to; that commission is merely a percentage of the proceeds and is collected before the proceeds are sent to whomever they belong.

. Because the IRS lacked a right of immediate possession of the car or the proceeds— and cannot succeed on its conversion claim without that right — we do not address Plains Capital's or Boardwalk's additional arguments that the other elements of a common-law conversion claim were lacking, the special requirements for conversion of money were not met, and the IRS consented to Boardwalk’s paying the money to Plains Capital.

. Phelps v. United States, 421 U.S. 330, 334-35, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975) (determining that a tax lien attaches to a thing and whatever is substituted for it and specifying that the IRS can follow the proceeds wherever they can distinctly be traced); United States v. Bess, 357 U.S. 51, 57, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958) ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere.”) (internal quotation marks omitted).

. Plains Capital’s argument that the money it received from Boardwalk was not traceable to the sale of the Ferrari, because it was paid out of Boardwalk’s working capital rather than directly from the money given by the purchaser of the Ferrari, is without merit. Longstanding precedent establishes that the lien reattaches to "whatever is substituted” for the item. Sheppard v. Taylor, 30 U.S. 675, 710, 5 Pet. 675, 8 L.Ed. 269 (1831). The money transferred to Plains Capital was treated as the proceeds from the sale: The amount transferred was entirely based on the sale price, and the money was applied to Rand's debt. Working funds were used only because the buyer's third-party financing required clear title to release the money, and Boardwalk felt it needed to give Plains Capital money to ensure clear title. This was just a substitute, the funding provided shortly thereafter by third-party financing.
Accepting Plains Capital and Boardwalk's argument here would mean that merely funneling money through an intermediary would defeat any attempts at tracing or maintaining liens, easily thwarting collection. As a tool of equity, tracing is not so easily restrained by substanceless formalities. "[T]he goal of 'tracing' is not to trace anything at all in many cases, but rather [to] serve[] as an equitable substitute for the impossibility of specific identification.” United States v. Henshaw, 388 F.3d 738, 741 (10th Cir.2004) (quoting William Stoddard, Note, Tracing Principles in Revised Article 0 § 9-315(B)(2): A matter of Careless Drafting, or an Invitation to Creative Lawyering, 3 Nev. LJ. 135, 135 (Fall 2002)).

. In United States v. Donahue Industries, Inc., 905 F.2d 1325, 1330-31 (9th Cir.1990), the court said that if a bank applies funds that are subject to a tax lien to debts the taxpayer owes the bank before the IRS serves a levy, *385 the bank must still turn over that money received from the taxpayer in response to a later levy. "Levy may be made 'upon all property and rights to property ... belonging to [a taxpayer] or on which there is a [federal tax] lien.’ A federal tax lien ... continues to attach until either the tax is paid or the lien becomes unenforceable because of lapse of time ... regardless of any subsequent transfer of the property.” Id. (internal citations omitted) In United States v. Bank of Celina, 721 F.2d 163, 165-66, 169 (6th Cir.1983), the court held that when a bank extinguishes a taxpayer’s property interest in funds by applying those funds to debts the taxpayer owes to the bank, the liens still remain attached to those funds, so the bank must turn over the money in response to a levy. Finally, in United States v. Cache Valley Bank, 866 F.2d 1242, 1245 (10th Cir.1989), the court held that when a bank exercises its right to offset taxpayer’s debt against bank deposits, when those deposits were subject to a tax lien, the government may maintain a lien foreclosure action to recover the funds that were subject to the tax lien before the setoff.

. In United States v. Citizens & Southern National Bank, 538 F.2d 1101, 1106 (5th Cir.1976), banks offset taxpayers’ balances against debts the taxpayers owed the banks after notice of levy was served. The court noted that "[s]ince the contractual right of setoff required some discrete act by the banks and neither bank in the present cases performed such an act until after service of notice of the levy, depositors retained property interests in the accounts subject to levy.” The IRS argues that this focus on timing means that if the setoff were performed before the levy was served, the taxpayer’s interest would be terminated, and the bank would possess the money safe from levy.
In the same vein, in Texas Commerce Bank—Fort Worth, N.A. v. United States, 896 F.2d 152, 158 (5th Cir.1990), we explained that in previous cases, parties that refused to surrender property to levy took no legally enforceable measures to assert their property interest. The decision highlights that in all the cases in which banks offset taxpayers’ deposits against debts owed to the bank, they did so only after the IRS served the banks with a notice of levy, and post-levy setoffs are usually ineffective. Id. A Second Circuit decision intimates the same result, stating that money in an account is the taxpayer’s property until the bank acts to restrict the account, so all the funds in his checking account were his property at the time the IRS served notice of the levy. United States v. Sterling Nat’l Bank & Trust Co. of N.Y., 494 F.2d 919, 922 (2d Cir.1974). But none of these decisions actually holds that applying the funds to a taxpayer’s debt before the levy is served entitles the bank to keep properly in the face of a levy. Another court, in Congress Talcott Corp. v. Gruber, 993 F.2d 315, 320 (3d Cir.1993), explained that proposition more plainly: "In a levy action, if there is no balance remaining in a fund used to satisfy a creditor's outstanding claims, the taxpayer will not be considered to have a 'property interest’ in the funds.” (That decision is factually less on point than are others, because the tax liens were entered after the bank had obtained security interests in the taxpayers’ funds. Id. at 316-17.)

. Plains Capital's view of dissipation would also unreasonably hamper the collection of unpaid taxes. If a levy is defeated once the bank offsets funds subject to a lien against deposits, banks will begin taking money they know is subject to tax liens and applying it the instant it is received. The IRS would need to be waiting to serve the levy the very moment the money was transferred, because the levy would be ineffective if served either two early or too late. Plains Capital's reading would thus allow banks’ internal bookkeeping mechanisms to impose unreasonable limitations on the IRS's power to collect tax revenue.