**Jacqueline DIXON, Jackie Dixon Inc., Plaintiffs,**

v.

**UNITED STATES of America, U.S. Treasury Department, Internal Revenue Service, Defendants.**

**Civ. A. No. 88-22-THOM.**

United States District Court, M.D. Georgia, Thomasville Division.

July 1, 1988.

Alfred J. Turk, III, Atlanta, Ga., for plaintiffs.

Edgar W. Ennis, Jr., U.S. Atty., Macon, Ga., and Curtis L. Bowman, Dept. of Justice, Washington, D.C., for defendants.

## OPINION AND ORDER

ELLIOTT, District Judge.

The Plaintiffs above named filed this action on April 21, 1988, seeking to enjoin the United States from taking any collection activity against the Plaintiffs with respect to the tax liabilities of Andrew M. and Margaret Dixon (taxpayers) and to order the return of any of Plaintiffs' property which the Defendant had levied upon for satisfaction of the taxpayers' liabilities, jurisdiction being claimed under 26 U.S.C.

§ 7426 and 28 U.S.C. § 1346. A hearing was held on April 27, 1988, at which time the Court issued a temporary restraining order to prevent further collection pending a hearing on the merits. A hearing on the merits was held on May 5, 1988, after which counsel for the parties submitted their proposed findings of fact and conclusions of law, which proposals have had the Court's consideration. The Court's findings and conclusions will readily appear in the body of the Court's opinion which follows.

The Plaintiff, Jackie Dixon, Inc., is a Georgia corporation operating a retail establishment under the name of "Dixon's Superette" located in Moultrie, Georgia, at 1406 West Bypass. The establishment engages in the sale of groceries, gasoline, and general merchandise. It has an operating account with American Banking Company in Moultrie, Georgia, and the funds deposited to said account are generated from the operation of the retail business and are used to pay the operating expenses of the business. Plaintiff Jacqueline Dixon, Andrew M. Dixon, Sr., and others have authority to sign checks on said account.

Andrew M. Dixon, Sr. is the father of Plaintiff Jacqueline Dixon, and until approximately January, 1984, he was the operator and proprietor of a store under the same name of "Dixon's Superette" until the establishment was the subject of an Internal Revenue Service tax sale in January, 1984, to partially satisfy the outstanding tax liabilities of the taxpayers.

On April 15, 1988, the Internal Revenue Service, through its agent, Revenue Officer Ethel Johnson, initiated action to collect from the bank account of Jackie Dixon, Inc. by serving a levy on the account. Subsequently, on April 19, 1988, the bank was served with a nominee levy against the same account. The purpose of the levy was to collect unpaid liabilities of the taxpayers for the tax years 1975, 1976, and 1982 of approximately $90,000 and, pursuant to the notice of levy, the American Banking Company paid over approximately $12,000 to the United States.

The corporation, Jackie Dixon, Inc., was formed in February, 1984. Jacqueline Dixon is the President of the corporation, and the General Manager of the store is her father, Andrew M. Dixon, Sr.

The Court has jurisdiction pursuant to 26 U.S.C. § 7426 and 28 U.S.C. § 1346 only to decide claims where a levy has been made. To the extent Plaintiffs seek relief from this Court with respect to notices of lien filed by the Internal Revenue Service (as opposed to notices of levy) this Court lacks jurisdiction. Treasury Regulations on Procedure and Administration, Section 301.7426–1.

Since Andrew M. Dixon, Sr. and Margaret Dixon (taxpayers) are indebted to the United States for unpaid federal taxes, penalties, and interest, the United States has a lien upon all property and rights to property of the taxpayers to satisfy that liability. 26 U.S.C. §§ 6321–6322. Whether the taxpayers own or have rights in the property levied upon is a factual question which must be decided upon the unique facts of the particular case. *Flores v. United States*, 551 F.2d 1169 (9th Cir.1977).

Under 26 U.S.C. § 7426 a person must satisfy two requirements in order to successfully maintain an action for wrongful levy. First, it must be shown that the person has an interest in or a lien upon such property. *Flores v. United States, supra*, at 1171. Second, the property must be shown to be "wrongfully levied upon." A levy is wrongful where the property levied upon "does not, in whole or in part, belong to the taxpayer against whom the levy originated." *Arth v. United States*, 735 F.2d 1190 at 1193 (9th Cir.1984).

In a wrongful levy action, as is the general rule, the ultimate burden of proof is on the plaintiff. Thus, the Plaintiffs must demonstrate that the levy filed was wrongful, and the United States bears the burden of persuasion with respect to establishing a nexus between the delinquent taxpayer and the subject property sufficient to support the levy. *Flores v. United States, supra.*

The Court concludes in this case that the United States has established the

requisite nexus connecting the delinquent taxpayers to the property in question. As has already been noted, until 1984 Andrew M. Dixon, Sr. was the operator and proprietor of Dixon's Superette when the Superette was the subject of an Internal Revenue Service tax sale. The corporation, Jackie Dixon, Inc., was formed the following month and the President of the corporation is Dixon's daughter, Jacqueline Dixon, who was at that time a 21 year old full-time student in Atlanta. Jacqueline Dixon was not working in 1981, 1982, or 1983, and was claimed as a dependent on the taxpayers' 1984 and 1985 income tax returns. Andrew M. Dixon, Sr. continues to serve as the General Manager of the Superette, and the business licenses issued by the City of Moultrie in connection with the operation of the business are issued to Dixon's Superette and Andrew M. Dixon, Sr. The City of Moultrie, Dixie Distributing Company, and Georgia Crown Distributing Company bill Andrew M. Dixon, Sr. for goods and services received by Dixon's Superette. The taxpayers, as well as Jacqueline Dixon and her brother, have authority to sign the corporate checks. The address of the corporation is the same as the taxpayers' and it is noted that during her testimony Jacqueline Dixon repeatedly characterized the operation as a "family business."

It was also encumbent upon the Plaintiffs to prove that, despite the substantial nexus above described, they were in fact the legitimate owners of the properties and that the levy was wrongful. It is the Court's view that the Plaintiffs have failed to carry this burden. In that connection the Court takes note of the fact that during the course of her testimony Jacqueline Dixon was unsure whether she was even a shareholder of the corporation. Although the store has continued to generate a profit, the corporation has never declared a dividend. The corporate tax returns show that the gross receipts of the business in 1984 were $389,158 and in 1985 were $432,027 and in 1986 were $359,762. Jacqueline Dixon stated that her father, Andrew Dixon, Sr., is paid a commission of 5% of the gross sales. On cross-examination it was shown that 5% of the gross did not calculate to what was reflected as a commission expense of the corporation. Later Jacqueline changed her testimony stating that the 5% was not based on total gross. In any event, Andrew Dixon, Sr. is always paid his commission in cash although no other expenses of the store were paid in cash. Jacqueline Dixon could not adequately explain to the Court why cash was paid to Andrew Dixon, Sr. or how it was accounted for in the books. Andrew Dixon, Sr. did not report any compensation from the store on his 1984 income tax return, $12,000 on his 1985 return, and $18,000 on his 1986 return. Jacqueline Dixon testified that between 1984 and 1987 her brother, Andrew Dixon, Jr. was compensated out of the cash her father received. In 1985 and 1986 the store also employed Warren Dixon Mickey, and Jacqueline Dixon could not explain, and the corporate records do not reflect, how compensation payments were paid to Warren Dixon Mickey. In any event, it was clear that taxes were not withheld from employees' wages until 1987.

There have been other significant irregularities in the operation of the business. Jacqueline Dixon testified that she borrowed $15,000 from Freddie Johnson to provide an inventory for the business, but there is no written instrument evidencing any loan from Freddie Johnson to her, and, although she stated she borrowed the money, the corporation makes the required repayments and she does not report the payments made on her behalf as income on her personal tax returns. Additionally, Freddie Johnson purchased the real estate at the tax sale and he leases the same property back to Dixon's Superette, and the lease agreement calls for monthly rentals of $1,200. The rental amount is never increased or decreased, yet in 1984 the corporation reflected total rent expenses of $14,400, in 1985 $12,000, and in 1986 $1,200. Jacqueline Dixon was unable to explain this fluctuation of the rent expenses.

Jacqueline Dixon appeared to be unaware of material transactions entered into by the corporation. She testified that the corporation has never paid any director's

fees, yet the 1984 corporate return reflects $1,000 paid in director's fees and $2,277 paid as director's fees in 1985. She testified that the corporation has never made any loans to its employees yet the 1985 corporate return reflects employee loans of $4,925.

Jacqueline Dixon's explanation of the source of the funds necessary to form the corporation is simply implausible. She testified that the amount of capital invested by her in forming the corporation was $10,-000 and she stated that the funds used for her purchase of stock and payment of legal fees came from her accumulated savings. In fact she made it clear that the $15,000 that she borrowed from Freddie Johnson was not used to purchase stock or pay the legal fees of incorporation. She initially testified that she had accumulated funds from employment, but she eventually admitted that she was not working in 1981, 1982, and 1983. Her explanation of the accumulated savings used to purchase stock and pay legal fees was that during the summer months when she was out of school she made about $1,000 for baby-sitting, all of which she saved in her bedroom "some place."

The Court finds the testimony of Jacqueline Dixon to be clearly inadequate to support the Plaintiffs' claim to be the legitimate owners of the property in question. The fact that a corporation exists is not itself adequate to justify treating the corporation as a separate entity. The corporate concept is sometimes abused, and Courts have not hesitated to ignore the fiction of separateness when the corporate device frustrates the clear intent of the law. The inability of the United States to satisfy legitimate tax debts clearly may form a sound basis for such disregard of corporate form, *Valley Finance, Inc. v. United States,* 629 F.2d 162 (D.C.Cir.1980), and in this case the Court determines it to be clear that the only purpose of the corporation is to frustrate the United States in its efforts to collect legitimate tax debts. The Plaintiffs have failed to prove that they are in fact the legitimate owners of the subject properties and that the levy was wrong.

It is not overlooked that the Plaintiffs contend that the Internal Revenue Service collection officer was negligent, but the question of negligence would not become material unless there was a wrongful levy and, having determined that the levy was not wrongful, we need not discuss the question of negligence.

Consistent with the foregoing, it is hereby ordered that the relief sought by the Plaintiffs in their complaint is denied and that Plaintiffs' complaint be and is hereby dismissed and that this Court's order of April 27, 1988, in this matter is vacated. Accordingly, judgment will be entered in favor of Defendant, dismissing the Plaintiffs' complaint with prejudice, and awarding Defendant its costs.