**TEXAS COMMERCE BANK–FORT WORTH, N.A.,**
Plaintiff–Appellee/Cross–Appellant,

v.

**UNITED STATES of America,**
Defendant–Appellant/Cross–Appellee.

No. 88–1809.

United States Court of Appeals,
Fifth Circuit.

March 16, 1990.

**154**

Marvin Collins, U.S. Atty., Fort Worth, Tex., Steven W. Parks, Gary R. Allen, Chief, Appellate Section, Tax Div., Dept. of Justice, William S. Estabrook, Asst. Atty. Gen., Washington, D.C., for defendant-appellant/cross-appellee.

Thomas Nezworski, George Haratsis, McDonald, Sanders, Ginsburg, Newkirk, Gibson & Day, Fort Worth, Tex., for plaintiff-appellee/cross-appellant.

Before GOLDBERG, POLITZ, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The United States and Texas Commerce Bank, Fort Worth ("TCB") cross-appeal from the district court's summary judgment resolving the parties' conflicting interests in funds held by TCB for the benefit of C.I. Construction Inc. ("CIC"). The district court found that the IRS held a superior lien over CIC's $40,233.91 bank account ("account"), while TCB possessed a prior interest in the $83,907.00 check ("check") made payable jointly to TCB and CIC. On appeal, the parties dispute the court's decision regarding priority over the bank account, and the court's reluctance to impose a 50% penalty against TCB for wrongful dishonor of the levy. Significantly, however, the IRS now concedes that TCB's lien in the $83,907 check primed the IRS' interest in those funds. We affirm the district court's summary judgment order. We hold that TCB had the right to institute a wrongful levy action concerning property in which it claimed a lien superior to that of the IRS, where (1) the IRS had not yet filed a lawsuit to enforce its levy and (2) TCB in good faith honored the levy concerning property in which the relative priority of its lien claim was dubious.

## I.

## BACKGROUND

CIC obtained business loans from Texas Commerce Bank in November, 1982 for $325,000, and on November 12, 1985 for $121,585.14. CIC secured these loans in two ways. First, it executed promissory notes which provided TCB with a "lien and contractual right of set-off in and to all money now in or at any time hereafter coming within payee's [TCB's] custody and control." At all times during this transaction, CIC maintained two general deposit accounts with TCB.

Second, on November 30, 1982, CIC signed a security agreement giving TCB an interest in "all of debtor's accounts now owned or hereafter acquired." TCB properly perfected this security interest by filing a timely financing statement. CIC executed another security agreement in favor of TCB in February, 1985, giving the bank an interest "in all accounts and accounts receivable ... of whatever nature now owned by debtor or existing or hereafter acquired ... and all proceeds of the collateral." These security interests extended to all future advances by TCB and so covered the November 1985 loan.

During 1985 and 1986, CIC's business liabilities exceeded its revenue. In August, 1985, CIC contracted with Par Properties No. 1 ("Par") to construct a shopping center. Par would pay CIC in installments as

CIC completed portions of the project, for a total anticipated revenue of $504,787. This income could not satisfy CIC's mounting debts. CIC had already failed to pay its federal employment taxes for the first two quarters of 1985. The IRS filed Notices of Tax Lien with the Texas Secretary of State for $33,417 (August 3, 1985) and $93,404.53 (September 24, 1985). CIC disregarded these notices.

Additionally, CIC defaulted on its loan from TCB. Sometime before January 1986, TCB placed an administrative hold on CIC's bank accounts, allowing TCB to decide whether it would honor individual checks presented for payment. This procedure enabled TCB closely to monitor the cash flow in these accounts. TCB also requested that Par make all checks for CIC's completed work jointly payable to CIC and TCB. This dispute involves one of these co-owned checks.

On January 8, 1986, between 8:30 and 9:00 a.m., an employee of CIC presented to TCB and $83,907.00 Par Properties check payable jointly to CIC and TCB and endorsed "FOR DEPOSIT ONLY". This check represented payment for work completed through January 2, 1986. Later that morning, the IRS served a notice of tax levy against all CIC property in TCB's hands for a total of $87,522.02. TCB surrendered the $40,233.91 contained in CIC's bank accounts but did not release the Par check. On or before January 10, TCB accelerated repayment of CIC's loans and applied the Par check against that indebtedness.[1] The IRS served a second notice of levy on January 14, 1986 in the amount of $43,353.43.

## II.

### SUMMARY JUDGMENT

On January 22, 1986, TCB instituted a wrongful levy action under 26 U.S.C. § 7426, requesting a declaration of the parties' rights in Par's check and a return of the bank account balance. The IRS coun-

terclaimed under 26 U.S.C. § 6332(c)(2) for wrongful dishonor of the levy, seeking a 50% penalty against TCB for its failure to surrender the check. The district court granted cross motions for summary judgment in part. Finding that TCB was not the "holder of a security interest" in the bank accounts as required by § 6323(a), and that the administrative hold did not divest CIC of its property interest in the funds, the court adjudged the IRS' tax lien on the bank account superior to TCB's interest. Conversely, TCB held a superior interest in Par's check as the proceeds of accounts receivable. The district court declined to impose the 50% penalty against TCB. Both parties appeal from this decision.

When an appeal is taken from summary judgment, we review the district court's actions de novo, applying the same standards used by the district court. *Degan v. Ford Motor Company*, 869 F.2d 889, 892 (5th Cir.1989). Where, as here, questions of law control the disposition on summary judgment, we must subject the controverted issues to full appellate review. *Barrett Computer Services Inc. v. PDA, Inc.*, 884 F.2d 214, 215–16 (5th Cir.1989); *Netto v. Amtrak*, 863 F.2d 1210, 1212 (5th Cir.1989); *Brooks, Tarlton, Gilbert v. United States Fire Insurance*, 832 F.2d 1358, 1364 (5th Cir.1987). Summary judgment may be affirmed, regardless of the correctness of the district court's rulings, when we find an adequate and independent basis for that result in the record. *Schuster v. Martin*, 861 F.2d. 1369, 1371 (5th Cir.1988).

## III.

### WRONGFUL LEVY ACTION

The IRS alleges that TCB responded improperly to the government's Notices of Tax Levy by filing a wrongful levy action under 26 U.S.C. § 7426. According to the IRS, TCB should have surrendered both

---

1. The record does not indicate whether TCB actually deposited these funds into CIC's account and then exercised its contractual set-off rights, or merely endorsed the check, presented

it to Par's bank for payment, and then applied the money against CIC's debt. Since the IRS agrees that TCB had a superior interest in these funds, we need not resolve this question.

the bank account and Par's check before pursuing TCB's statutory remedies against the United States. 26 U.S.C. §§ 6331–6332. The IRS seeks to impose a 50% penalty against TCB under 26 U.S.C. § 6332(c)(2) for wrongful dishonor of the levy.[2] Since TCB surrendered the proceeds of CIC's bank account, this argument concerns only TCB's retention of Par Properties' check.

■ Section 7426(a)(1), Civil Action By Persons Other than Taxpayers,[3] affords the exclusive remedy for an innocent third party whose property is confiscated by the IRS to satisfy another person's tax liability. *United Sand and Gravel Contractors v. United States*, 624 F.2d. 733, 739 (5th Cir.1980). *See Trust Company of Columbus v. United States*, 735 F.2d. 447, 449 (11th Cir.1984); *Valley Finance, Inc. v. United States*, 203 U.S.App.D.C. 128, 629 F.2d. 162, 168 (1980) *cert. den. sub. nom. Pacific Development Inc. v. United States*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981); *Rosenblum v. United States*, 549 F.2d. 1140, 1145 (8th Cir.1977) *cert. den.* 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977). In order to state a cause of action under this provision, the plaintiff must show: (1) that a levy has been *filed* against property in plaintiff's hands, (2) that plaintiff has an interest in or a *lien* on the property which is senior to the interest of the United States, and (3) that the levy was wrongful. *Security Counselors, Inc. v. United States*, 860 F.2d. 867, 869 (8th Cir.1988); *Flores v. United States*, 551 F.2d. 1169, 1171 (9th Cir.1977). *See Treasury Regulations* § 301.7426–1 (1988). A levy is "wrongful" if it seizes property that does not belong, in whole or in part, to the taxpayer. *Arth v.*

*United States*, 735 F.2d. 1190, 1193 (9th Cir.1984)); *Trust Company of Columbus*, 735 F.2d. at 448; *Al–Kim Inc. v. United States*, 650 F.2d. 944, 947 (9th Cir.1979). *See* Treasury Regulations § 301.7426–1 (1988); Senate Report No. 1708, 89th Congress, 2d Session, reprinted in 1966 U.S. Code Congressional & Administrative News, 3722, 3751.

■ Although the plaintiff must prove that the government has levied against the property at issue,[4] the plaintiff need not demonstrate that the property has actually been surrendered in response to the levy. Section 7426(a)(1) states:

> Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

In this way, Congress sought to balance the primary lienholder's interests in the property against the government's interest in collecting tax revenue. 1966 U.S.Code Congressional & Administrative News at 3724. When the levied property provides the only realistic source from which the senior lienholder can realize collection, or when the levy effectively destroys or otherwise irreparably injures the lienholder's superior interest, the tax levy is "wrongful" as against that lienholder, even if the lienholder's legal rights to enforce its interests survive the levy. Treasury Regulations § 301.7426–1 (1988). Section 7426 permits the lienholder to safeguard its superior rights in the property without surrendering the collateral.

The remedial provisions of section 7426 support this interpretation. Section 7426(b)(1) permits a court to *enjoin en-*

---

**2.** Section 6332(c)(2) provides:
> In addition to the personal liability imposed by paragraph (1), if any person required to surrender such property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1).

**3.** Section 7426(a) provides:
> If a levy is made on property ..., any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such

property and that such property was wrongfully levied upon may bring a civil action against the United States ...

**4.** Several courts have held that § 7426 does not permit a third party who *anticipates* that the IRS will levy against property to file for a declaration of the parties' interests in the assets. *Interfirst Bank Dallas, N.A. v. United States*, 769 F.2d. 299, 304 (5th Cir.1985) *cert. den.* 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986); *Nickerson v. United States*, 513 F.2d. 31, 33 (1st Cir.1975).

*forcement of the levy*, "[i]f a levy ... would irreparably injure rights in property which the court determines to be superior to rights of the United States in such property." Inferentially, if a court may remedy a wrongful levy by enjoining enforcement, the lienholder need not have honored the levy before filing suit. *Myers v. United States*, 647 F.2d. 591, 602 (5th Cir.Unit A 1981) (§ 7426 guarantees immediate access to the courts and the right to seek injunctive relief). *See Al–Kim Inc.*, 650 F.2d. at 948; *Valley Finance*, 629 F.2d. at 171 and n. 19. (Recognizing that § 7426 permits pre-surrender injunctive relief). By contending that section 7426 requires compliance with the levy as a prerequisite to suit, the IRS renders this injunction provision a nullity. We must avoid statutory constructions which render parts of the statute inoperative or superfluous. *Mountain States Telephone and Telegraph v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985); *Duke v. University of Texas–El Paso*, 663 F.2d. 522, 526 (5th Cir.1981), *cert. den.* 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 320 (1984).

██ Both the prescriptive and the remedial portions of section 7426 permit third party lienholders to file wrongful levy actions against the United States before complying with the levy. Despite this express statutory language, the IRS contends that once the Secretary has demanded surrender of the levied property, the individual holding the property must relinquish it to the United States, or face the statutory penalties. 26 U.S.C. § 6332. We reject this conclusion.

Section 6332(a) states:

[A]ny person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

Subsequent sections of this provision impose personal liability for the levied property's value on any person who fails or refuses to honor the levy, plus a 50% penalty if the refusal occurs without reasonable cause. 26 U.S.C. § 6332(c).

In *United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985), the Supreme Court enumerated the procedures which a bank should follow when faced with an IRS demand for the surrender of levied property under § 6332. The Court observed that "a bank served with a notice of levy has two, and only two, possible defenses for failure to comply with the demand: that it is not in possession of *property* of the taxpayer, or that the property is subject to a prior judicial attachment or execution." 472 U.S. at 727, 105 S.Ct. at 2928. *See United States v. Bell Credit Union*, 860 F.2d. 365, 367 (10th Cir.1988); *United States v. Sterling National Bank & Trust*, 494 F.2d. 919, 921 (2d Cir.1974).

Where these defenses do not apply, the Government's interest in the speedy collection of taxes trumps other claimants' interests in the property, permitting the IRS to levy on the assets at once and to resolve ownership disputes in a post-seizure administrative or judicial proceeding. *National Bank of Commerce*, 472 U.S. at 729, 105 S.Ct. at 2929. The Court cautions that levy procedures do not determine ownership rights, and that third parties whose assets are "wrongfully" seized may apply to the government for return of that property. 472 U.S. at 731, 105 S.Ct. at 2930. The administrative levy merely protects the Government from diversion or loss of funds while courts resolve these competing claims. 472 U.S. at 719–20, 105 S.Ct. at 2923–24. *See State Bank of Fraser v. United States*, 861 F.2d. 954, 959 (6th Cir. 1988).

Appellate Courts have applied these principles to situations in which banks have alleged a lien interest in the funds on deposit. In *United States v. Citizens and Southern National Bank*, 538 F.2d. 1101, 1106 (5th Cir.1976) *cert. den.* 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977), our

court held that "the claim of a prior lien may not be interposed as a defense to an action to enforce a tax levy." Instead, "[t]he banks may litigate the priority of liens issue in an action under 26 U.S.C. § 7426." *Id.* at 1106. Accord *Bell Credit Union,* 860 F.2d. at 367; *Sterling National Bank,* 494 F.2d. at 921.

The 11th Circuit extended the *Citizens and Southern National Bank* holding to wrongful levy actions under § 7426. In *Trust Company of Columbus,* 735 F.2d. at 447, the bank held a perfected security interest in bank accounts that was superior to the IRS' claim to the funds. Nevertheless, the bank elected to surrender the funds and to litigate the priority questions at a later date. In *dictum,* the 11th Circuit ratified the bank's decision, explaining, "the proper procedure in contesting a levy is to surrender the funds and then litigate the priority of liens." *Id.* at 449. Based upon these decisions, the IRS contends that TCB violated the enforcement scheme established by the Internal Revenue Code when it filed the wrongful levy action without first surrendering the Par Properties check.

None of the cases presented by the IRS in support of its position directly governs TCB's lawsuit. In most of these cases, the underlying circumstances and the attendant policy considerations differ materially from TCB's situation.

The majority of these cases concern the proper procedure to be followed by a third party who faces a government-initiated § 6332 lawsuit to enforce the levy.[5] Although the parties to these cases refused to surrender the property, they took no *legally enforceable* measures to assert their property interests prior to the government's suit. Many of the banks involved did set-off the taxpayer's deposits against debts which the taxpayer owed to the bank. *See State Bank of Fraser,* 861 F.2d. at 954; *Bell Credit Union,* 860 F.2d. at 365; *United States v. Central Bank of Denver,* 843 F.2d. 1300 (10th Cir.1988); *Citizens and*

*Southern National Bank,* 538 F.2d. at 1101. However, these set-offs uniformly occurred *after* the IRS served the banks with Notices of Levy. *See United States v. Bank of Celina,* 721 F.2d. 163, 167 (6th Cir.1983) and cases cited therein. Post-levy set-offs are usually ineffective to protect any interest which the bank might have held in the levied funds. *J.A. Wynne Co., Inc. v. R.D. Phillips Construction Co.,* 641 F.2d. 205, 208 (5th Cir.1981); *Citizens and Southern National Bank,* 538 F.2d. at 1101; *Sterling National Bank and Trust Co.,* 494 F.2d. at 921–23.

Nevertheless, these institutions set off the funds, compelled the IRS to institute a levy enforcement action, and then interposed the priority of their spurious liens as a *defense* to the lawsuit. *State Bank of Fraser,* 861 F.2d. at 954; *Bell Credit Union,* 860 F.2d. at 365; *Central Bank of Denver,* 843 F.2d. 1300; *Citizens and Southern National Bank,* 538 F.2d. at 1101. In at least one instance, the lienholder asserted a lien priority defense in the enforcement action simply because the 9 month statute of limitations had already expired on its § 7426 claim. *Bell Credit Union,* 860 F.2d. at 365. *See United Sand and Gravel Contractors,* 624 F.2d. at 739 (§ 7426 provides exclusive remedy against IRS for lienholders even when action is time-barred).

Faced with these dilatory tactics, the circuit courts have required third parties to surrender the levied property in response to the enforcement action, and then to assert lien priorities in a suit for wrongful levy under § 7426. *Citizens and Southern National Bank,* 538 F.2d. at 1106. *Accord State Bank of Fraser,* 861 F.2d. at 954; *Central Bank of Denver,* 843 F.2d. 1300; *Sterling National Bank,* 494 F.2d. at 921. Even the Supreme Court acknowledged that the bank's unwarranted delay, and the government's need to collect tax revenue promptly, motivated its decision in *National Bank of Commerce,* 105 S.Ct. at

---

5. *See,* for example, *National Bank of Commerce,* 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985); *State Bank of Fraser v. United States,* 861 F.2d. 954, 960 (6th Cir.1988); *Bell Credit*

*Union,* 860 F.2d. at 365; *United States v. Central Bank of Denver,* 843 F.2d. 1300, 1303 (10th Cir. 1988); *Citizens and Southern National Bank,* 538 F.2d. at 1101.

2924. *See United States v. Rodgers,* 461 U.S. 677, 699, 103 S.Ct. 2132, 2145, 76 L.Ed.2d 236 (1983). Finally, the government's brief in this case justifies the surrender-then-litigate rule on the grounds that a party may not ignore the levy "on the *assumption* that, *if pressed,* it could establish its senior claim to the fund." (emphasis added). None of these considerations apply to TCB.

When confronted by the Notices of Levy, TCB pursued two courses of action. Although TCB possessed a contractual right of set-off over CIC's bank accounts similar to those exercised by the banks in the above cases, TCB surrendered the funds in these accounts. On the other hand, TCB's interest in the Par Properties check primed the IRS tax lien, *as the government concedes on appeal.* TCB withheld the check and, within eight days of the second Notice of Levy, filed a wrongful levy suit to adjudicate the parties' respective rights in this property.

We have expressly held that banks should assert their claims of lien priority in a § 7426 action. *Citizens and Southern National Bank,* 538 F.2d. at 1106. This statute permits third parties to file suit "without regard to whether such property has been surrendered." By promptly filing its § 7426 Wrongful Levy Suit, TCB offered to prove its meritorious claim of lien priority outright, before the government "pressed it" into establishing its senior in-terest in a § 6332 suit. We will not permit the IRS to file a § 6332 counter-claim in response to TCB's wrongful levy action, and then to assert that its claim defeats TCB's rights under § 7426. *State Bank of Fraser,* 861 F.2d. at 960. (Recognizing the procedural distinction between a levy enforcement action and a wrongful levy action). Since, unlike the parties to the above actions, TCB followed the procedural scheme established by § 7426 to assert its superior interests in the check, TCB should have its claim adjudicated on the merits.

Besides following the correct procedure, TCB was also the proper plaintiff to assert a section 7426 claim. The same was not true of parties to these other suits. In *National Bank of Commerce,* 105 S.Ct. at 2928, the bank refused to surrender assets in the levied accounts because *other depositors* might possess an interest in those funds. Section 7426 permits only those parties with an interest in the funds to institute a wrongful levy action. Consequently, as the Supreme Court held, the bank could not contravene the IRS levy by asserting some other party's interests. Unlike National Bank of Commerce, TCB presented its own superior lien in the § 7426 suit.[6]

Even the one factually similar case offered by the IRS is distinguishable from this case. As explained above, the 11th Circuit found that a bank which possessed a superior security interest to the IRS act-

---

**6.** In addition to these procedural differences, TCB's action invokes distinct substantive concerns. Many of the cases relied upon by the IRS involve fraudulent behavior and the dissipation of collectible assets. For instance, the bank, in *National Bank of Commerce,* 105 S.Ct. at 2919, claimed that it could not ascertain what proportion of the assets in two jointly-held bank accounts constituted "property" of the taxpayer. *Id.* at 2922. Concerned that this rationale for defying the levy would permit "a delinquent taxpayer to evade ... his obligations by placing funds in joint bank accounts", the Supreme Court required the bank to surrender the money, allowing third parties to litigate over property rights in a subsequent proceeding. *Id.* at 2931. *See also Arth,* 735 F.2d. at 1193 (Funds in "assigned" bank account attributed to delinquent corporation rather than to "independent contractor" who 'saved' company); *Valley Finance, Inc.,* 629 F.2d. at 162 (Seizure of Pacific Development Co. assets upheld after IRS charac-terizes company as the "alter ego" of delinquent taxpayer). While affirming the surrender-first rule in these situations, the courts stress "the apparent exigencies of the situation", and the need for the IRS to secure tax collection. *See National Bank of Commerce,* 105 S.Ct. at 2931; *Valley Finance, Inc.,* 629 F.2d. at 167.

By contrast, as the IRS concedes, TCB held a superior lien over the Par Properties check. TCB could not defraud the IRS by withholding those assets from the levy. Even if the IRS had held a superior claim, concerns over dissipation still would not apply. TCB had allegedly set-off the check against the taxpayer's bank debt. As a result, the IRS would retain a cause of action *against TCB* for surrender of those funds. Unlike a taxpayer who could conceal or dissipate the money, the bank would have all of its assets available to satisfy the IRS' claim. Therefore, TCB's wrongful levy action would not impair prompt collection of tax revenue.

ed properly when it surrendered the funds in response to the levy, and then instituted a wrongful levy action. *Trust Company of Columbus*, 735 F.2d. at 449. We agree that the statutes allow parties to elect that alternative procedure. However, the 11th Circuit went on to imply that "surrender-then-litigate" is the *only* permissible response to an IRS levy. *Id.* at 449. We question this assertion. The case itself did not present the question of a bank that litigated before surrendering the property. The court never discussed the specific language of § 7426. Instead, the court based its conclusions upon its reading of our decision in *Citizens and Southern National Bank*, 538 F.2d. at 1101. That case involved an enforcement action under § 6332 rather than a wrongful levy action under § 7426. *Id.* at 1106. As we indicated above, this procedural distinction alters the outcome of the analysis.

Later proceedings in the *Trust Company* case undermine the wisdom of the court's prior pronouncement. *Trust Company of Columbus v. United States*, 776 F.2d. 270, 272 (11th Cir.1985). After prevailing on the merits, the bank sought an award of attorney's fees under the Equal Access to Justice Act. The appellate court upheld the fee award, because the position advanced by the United States in the wrongful levy suit was not "substantially justified":

> [T]he conduct of the IRS prior to the bank's filing suit . . . left the bank with no alternative save to seek judicial relief. . . . [A]fter the levy the bank endeavored to explain to the IRS the priority of its lien over the tax lien . . .
>
> As stated in the District Court's opinion: . . . '[The IRS] did not respond to Plaintiff's written explanation, leaving Plaintiff no recourse but to file suit in this Court.'

*Id.* at 272.

The procedure established by these two decisions seems anomalous. Under the

first opinion, the bank must surrender even those assets over which it has *clear* priority, and then litigate priority issues in a wrongful levy action. If the IRS controverts the bank's priority position, it might incur the bank's costs and attorney's fees when the bank prevails. As a result, the IRS must not only surrender the assets which it seized, but must also expend dual litigation expenses.

This is precisely the result that the Supreme Court attempted to avoid in *National Bank of Commerce*, 105 S.Ct. at 2931, when it compared levy procedures to lien foreclosure actions:

> If the IRS were required to bring a lien foreclosure suit each time it wished to execute a tax lien on funds in a joint bank account, it would be uneconomical as a practical matter, to do so on small sums of money as those at issue here.

*Id.* at 2931. With regard to the costs incurred by the IRS, a levy procedure followed by a wrongful levy action in which the third party prevails and receives a fee award, is equivalent to a lien foreclosure action. Consequently, the benefits of speed and efficiency attributable to the levy procedure do not apply in a case like TCB's where the bank has clear priority over the disputed asset.

 Given the permissive language of Section 7426, the distinctions between TCB's case and similar precedents, and the IRS' concession that TCB satisfied the prima facie requirements under § 7426, we find that TCB justifiably instituted a wrongful levy action before surrendering the check. See *Security Counselors, Inc. v. United States*, 860 F.2d. 867, 869 (8th Cir.1988); *Flores v. United States*, 551 F.2d. 1169, 1171 (9th Cir.1977). *See also* Treasury Regulations § 301.7426–1 (1988).[7] Furthermore, we find that a meritorious wrongful levy action instituted prior to the

---

7. The government suggests that we have opened a gaping hole through which tax lien avoiders will stream. We doubt it. First, our holding is limited to assertion of a *meritorious* lien claim under § 7426. Second, IRS will nearly always counterclaim for enforcement of the levy when

it faces a § 7426 lawsuit by the party who withheld compliance. The IRS could seek its own injunctive relief to protect the disputed property pending litigation, in addition to seeking a § 6332 penalty where warranted.

surrender of the levied property constitutes "reasonable cause" to dishonor the levy for purposes of the 50% penalty clause under § 6332(c)(2). Thus, we affirm the district court's determination not to penalize TCB for its actions. Even if our construction of § 7426 is in error, however, it seems to us that this case is sufficiently novel to justify the conclusion that TCB had a "reasonable cause" to dishonor the levy and cannot suffer a 50% penalty for asserting valid, superior property rights in the check. *See United States v. Sterling National Bank & Trust, supra.*

## IV.

## LIEN PRIORITIES IN THE BANK ACCOUNTS

TCB also contends that it held a "security interest" in CIC's bank accounts which primed the IRS' interest. We reject this contention.

■■■ Section 6321 of the tax code gives the IRS a lien "upon all property and rights to property" belonging to a delinquent taxpayer. *Aquilino v. United States,* 363 U.S. 509, 512, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). The lien arises on the date that the IRS *assesses* unpaid taxes, applies to currently owned as well as after-acquired property, and continues until the taxpayer satisfies the debt, or the statute of limitations runs. 26 U.S.C. § 6322. *See Glass City Bank v. United States,* 326

U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945); *United States v. Cache Valley Bank,* 866 F.2d. 1242, 1244 (10th Cir.1989); *Prewitt v. United States,* 792 F.2d. 1353, 1355 (5th Cir.1986).

■■■ Where a third party also claims a lien interest in the taxpayer's property, the basic priority rule of "first in time, first in right" controls, unless Congress has created a different priority rule to govern the particular situation.[8] *Rice Investment Company v. United States,* 625 F.2d. 565, 568 (5th Cir.1980). *See United States v. Wingfield,* 822 F.2d. 1466, (10th Cir.1987) *cert. den. sub. nom. County of Boulder v. United States,* 486 U.S. 1019, 108 S.Ct. 1762, 100 L.Ed.2d 222 (1988). In this case, TCB relies on the special priority rules under § 6323(a) to contend that it is the "holder of a security interest" in the bank accounts, which primes the IRS' tax lien.

Section 6323(a) provides:

The lien imposed by section 6321 shall not be valid against any purchaser, *holder of a security interest,* mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed ... (emphasis added)

For purposes of this section, the term "security interest" means "any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability." 26 U.S.C. § 6323(h)(1).

---

**8.** To determine whether those liens not covered by a special priority rule are "first in time" as against a federal tax lien, courts rely on the judicially-created "choateness" doctrine. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 733–35, 99 S.Ct. 1448, 1461–62, 59 L.Ed.2d 711 (1979); *United States v. Pioneer American Ins. Co.,* 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); *United States v. New Britain,* 347 U.S. 81, 84, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1953); *United States v. Security Trust & Savings Bank,* 340 U.S. 47, 71 S.Ct. 111, 113–14, 95 L.Ed. 53 (1950). *See* 14 Merten's § 54A.013. In order to assert priority over the government, a lienholder must demonstrate that his lien became choate before the tax lien filing. A lien becomes choate when a) the lienor is identified, b) the property subject to the lien is established, and c) the amount of the lien is fixed. *New Britain,* 74 S.Ct. at 371.

Several circuits, including two panels of this court, have imported the "choateness" require-

ment into § 6323. *Rice Investment Co. v. United States,* 625 F.2d. 565, 571 (5th Cir.1980); *Texas Oil & Gas Corp. v. United States,* 466 F.2d. 1040, 1053 (5th Cir.1972) *cert. den. sub. nom. Pecos County State Bank v. United States,* 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973). *See J.D. Court Inc. v. United States,* 712 F.2d. 258, 263 (7th Cir.1983) *cert. den.* 466 U.S. 927, 104 S.Ct. 1708, 80 L.Ed.2d 182 (1984); *Sgro v. United States,* 609 F.2d. 1259, 1261 (7th Cir.1979). A different panel of this court specifically rejected this reliance on choateness under § 6323 in situations clearly covered by the statute. *Aetna Insurance Co. v. Texas Thermal Industries Inc.,* 591 F.2d. 1035, 1038 (5th Cir.1979). *See Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 1790 n. 22, 56 L.Ed.2d 251 (1978); *Atlantic States Construction Inc. v. Hand, Arendall, Bedsole, Greaves, and Johnston,* 892 F.2d 1530 (11th Cir.1990). In view of the above resolution of the issues, we need not resolve this apparent conflict.

A security interest exists only when the lienholder satisfies two requirements:

(A) the property must be in existence at the time of the filing, and the interest must be protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (b) the holder must have parted with money or money's worth.

*Id.* Assuming that TCB's contractual rights to place an administrative hold on, or to set-off against, the bank accounts are intended to secure TCB's interests, TCB fails to satisfy the first requirement for lien priority.

TCB failed to prove that the $40,233.91 contained in CIC's bank accounts on January 8, 1986 at the time of the tax levy constituted "property in existence" before the IRS filed its Notices of Tax Lien on August 3 and September 24, 1985. Since bank accounts come into existence only after a customer deposits his funds, TCB's interest in CIC's bank accounts can only arise post-deposit. *See Sears v. Continental Bank and Trust,* 562 S.W.2d 843 (Tex. 1977). However, a tax lien attaches to all property or rights in property held by the delinquent taxpayer. *Aquilino,* 363 U.S. at 512, 80 S.Ct. at 1280; *Bell Credit Union,* 860 F.2d. at 369. Thus, any deposits made after the IRS filed its tax lien notices would have entered CIC's, and thus TCB's hands already impressed with the tax lien.[9] *See United States v. Bess,* 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958); *Cache Valley Bank,* 866 F.2d. at 1245; *Bank of Celina,* 721 F.2d. at 169. Since TCB did not prove that CIC deposited any portion of the $40,233.91 before the tax lien filing, TCB failed to meet this first requirement. Accordingly, we need not address the parties' interesting arguments concerning the Texas common law of pledge.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

9. The bank does not contend that its lien extended to a pre-deposit period, *e.g.* in the form of a security interest in accounts receivable, whose proceeds were paid into the TCB account.