United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 13, 2006**

Charles R. Fulbruge III
Clerk

REVISED JUNE 28, 2006

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-20966

CAPITOL INDEMNITY CORPORATION,

Plaintiff-Appellant

versus

UNITED STATES OF AMERICA, ET AL,

Defendants

UNITED STATES OF AMERICA and
COMMISSIONER, INTERNAL REVENUE SERVICE,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD, DeMOSS and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

    Capitol Indemnity Corporation (Capitol) appeals the adverse
summary judgment in its wrongful levy action against the United
States and the Commissioner of the Internal Revenue Service

(IRS). Because the government did not show that the liable taxpayer had a right to the property levied against, we reverse and render judgment in favor of Capitol.

## Facts and Proceedings Below

Beginning in 1999, Capitol acted as a surety for M.E.B. Engineering, Inc. (MEB) for several City of Houston (City) public works construction projects. In April 2000, MEB was awarded a prime contract by the City in the amount of $875,033.00 for the construction of a public improvement project known as the Lockwood Bridge Over Hunting Bayou (Lockwood contract). Also in April 2000, Capitol issued performance bonds and payment bonds in favor of the City respecting the Lockwood contract in the full amount thereof.

On August 28, 2000, the IRS filed a Notice of Federal Tax Lien with the Texas Secretary of State's Office in the amount of $46,821.25 for unpaid employment taxes and corporate income taxes. On September 6, 2001, under the terms of its indemnity agreement with MEB, Capitol filed a UCC-1 financing statement with the Texas Secretary of State's Office to record its rights and interest in all property of MEB and MEB's owners.

On January 23, 2002, Capitol informed the City that Capitol had received notices of default and various claims from subcontractors and suppliers of MEB for work performed or materials

2

supplied on the Lockwood contract,[1] and Capitol demanded that the City withhold all future payments to MEB under the Lockwood contract. On February 1, 2002, MEB submitted an Estimate and Certificate for Payment (ECP No. 14) based on MEB's completion of the work under the Lockwood contract. The City's Director of Public Works and Engineering signed ECP No. 14 as approved, indicating that $127,922.64 was due to MEB as of February 1, 2002, and also that an additional $45,594.88 of MEB's earnings had been retained by the City. As it is undisputed that the City did not make any payment to MEB on ECP No. 14 (or make any payment at all to MEB after some time before January 23, 2002), it is evident that the further approval needed for payment was not granted. On February 13, 2002, MEB's owner (Bhatti) wrote to the IRS regarding his and MEB's tax liability, and informed the IRS that he had "closed all businesses, including MEB" and that "$173,517.52 are immediately available on a completed City contract." The letter enclosed a copy of ECP No. 14 as signed "approved." In this letter to the IRS, Bhatti also wrote, "Please make sure to collect these funds immediately against our payables to IRS."

On February 19, 2002, the IRS filed a Notice of Federal Tax Lien with the Texas Secretary of State's Office in the amount of $103,393.99 for unpaid employment taxes and corporate income taxes.

---

[1]For example, during August and September of 2001, one supplier (TXI) gave Capitol statutory notices of a claim for payment in the amount of $96,075.51 against Capitol's payment bond for MEB.

3

This amount included $44,672.80 still unpaid from the amount noticed in August 28, 2000 plus $58,721.19 unpaid from assessments in 2001. On April 4, 2002, the IRS issued a Notice of Levy to the City that required the City to turn over to the IRS any of MEB's property that the City had, including MEB's income and rights to property that the City was already obligated to pay, up to an amount of $127,845.36.[2]

In a letter dated August 5, 2002, the City formally notified MEB that MEB was in material default of the Lockwood contract because of its consistent failure to supply an adequate number of skilled workers and sufficient material to complete the City's punchlist items. In the August 5 letter, the City also informed MEB that the Lockwood contract would terminate if MEB's default was not cured within seven days and that the City would then look to Capitol to complete the remainder of the work. MEB's default was not cured, the Lockwood contract formally terminated in August 2002, and Capitol entered into a Takeover Agreement with the City on January 3, 2003, for completion of the project pursuant to its obligations under the performance bond. When the Lockwood contract was terminated, the total amount of funds the City had not yet paid on the contract was $179,687.47. Capitol eventually incurred $235,006.23 in costs under its payment bond obligations and

---

[2]The total of $127,845.36 in the April 4, 2002 Notice of Levy represented the amount noticed in the unpaid balance from the February 19, 2002 Notice of Federal Tax Lien of $103,393.99, plus an upward adjustment of $42.00 to that unpaid balance, plus statutory additions of $24,409.37.

4

$22,288.00 in costs under its performance bond obligations for the Lockwood contract.

Capitol brought a wrongful levy action under 26 U.S.C. § 7426(a)(1) against the United States, the Commissioner of the IRS, and the City on December 19, 2002, seeking recovery of the $127,845.36 — the subject of the IRS's April 4, 2002, Notice of Levy. After the City paid $127,845.36 into the court's registry in February 2004, all claims involving the City were resolved by an agreed judgment that Capitol and the United States each take nothing (apart from their claims to the funds so paid into the registry) against the City and that the City take nothing as against the United States. Capitol and the government proceeded on cross-motions for summary judgment, and, on October 1, 2004, the court granted summary judgment in favor of the government.

### Jurisdiction and Standard of Review

The district court had jurisdiction under 28 U.S.C. § 1346(e), and this court has jurisdiction under 28 U.S.C. § 1291.

This court reviews a district court's grant of summary judgment *de novo*. *U.S. v. Retirement Services Group*, 302 F.3d 425, 429 (5th Cir. 2002). Summary judgment is proper if, after adequate opportunity for discovery, the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is

5

entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986). The moving party bears the burden of identifying an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2554 (1986). Summary judgment is properly granted if the record does not contain appropriate summary judgment evidence which would sustain a finding in the nonmovant's favor on any issue as to which the nonmovant would bear the burden of proof at trial. *Id.* at 2552-53.

## Discussion

Section 7426 allows any person claiming an interest in property upon which an IRS levy has been made to bring a civil action against the United States for wrongful levy. 26 U.S.C. § 7426(a)(1). In a levy proceeding, the IRS acquires only such rights to property that the taxpayer himself possesses. *United States v. National Bank of Commerce*, 105 S.Ct. 2919, 2927 (1985). As a result, we have noted that "[a] levy is 'wrongful' if it seizes property that does not belong, in whole or in part, to the taxpayer." *Texas Commerce Bank-Fort Worth, N.A. v. U.S.*, 896 F.2d 152, 156 (5th Cir. 1990). Therefore, we first address the threshold question of whether and to what extent MEB owned or had rights to the property levied upon. *Aquilino v. United States*, 80 S.Ct. 1277, 1280 (1960). To answer this question, we must look to state law. *Id.*

The district court recognized that this was the threshold question in this case; however, the court did not explicitly address Capitol's summary-judgment argument on this issue.[3] Nonetheless, the court's holding necessarily implies a determination that MEB had property rights in the $127,845.36 levied upon. Capitol argues that this determination was erroneous. We agree.

The contract between MEB and the City imposed on MEB diverse requirements respecting payment by MEB to its suppliers and subcontractors on the job, and entitled the City to withhold payment from MEB if, among other reasons, MEB failed to meet these requirements. On January 23, 2002, Capitol informed the City of notices of default and demands for payment that Capitol had received from MEB's subcontractors and suppliers. On or about February 1, 2002, the City refused to pay to MEB the amount requested in ECP No. 14 (even though the ECP was approved by the Director of Public Works and Engineering). The government has stipulated that the City's refusal to pay was proper, and it is undisputed that MEB never cured its defaults and that the Lockwood

---

[3]Specifically, in its brief in support of its motion for summary judgment, Capitol put forth a plethora of legal arguments for why it should prevail, including the argument that, due to MEB's failure to pay its subcontractors and suppliers, "the City was entitled to withhold payment of the contract funds, and . . . [therefore] as a matter of law, MEB did not have an interest in the contract funds remaining under the Lockwood Bridge Contract to which the claimed tax levy and lien notices . . . could attach." The government did not respond to this argument in its summary-judgment filings with the district court. In addition, at oral argument to this court, the government incorrectly claimed that Capitol had not made this argument below.

contract was eventually terminated due to MEB's default.[4]  In *Victore Insurance Company v. City of Bowie*, 23 S.W.3d 499 (Tex.App.—Fort Worth 2000, writ denied), the court addressed a similar situation in which a city withheld payment to a contractor based on the terms of a public works contract.  The court in *Victore* determined that the properly withheld funds were not the property of the contractor:

> "Where a project owner has a contractual right to withhold from a contractor amounts necessary to satisfy the subcontractors' and suppliers' claims, the retained funds are not the contractor's property, and the federal government cannot acquire the right to the funds via a tax lien against the contractor's property." *Id.* at 503.

In *Victore*, "[t]he parties stipulated, and the trial court found, that the City had the contractual right to withhold from the contract proceeds any amounts that [the contractor] had not paid suppliers and subcontractors." *Id.*  In this case, the only reason that the City's refusal to pay would be proper — as stipulated by the government — is that the City had the contractual right to withhold payment.  For the first time on appeal, the government argues that MEB had "earned the progress payment in dispute, and thus had acquired a property interest in the payment to which the

---

[4]In connection with the deposit into the court's registry, the City, the United States and Capitol entered into stipulations (filed with the court) stated to be "binding on each of them for all purposes," including the following:

> "On or about February 1, 2002, the City prepared and properly refused to pay to MEB the last pay estimate in the amount of $127,922.64 ('Last Pay Estimate'), for work performed by MEB pursuant to the Lockwood Contract."

8

federal tax liens attached, before the City withheld the payment."

The government cites no evidence to support this argument.

Instead, the government merely argues that, because the Lockwood contract explicitly provides that "[t]he period covered by each progress payment shall be one calendar month ending on the tenth day of the month," the work for which ECP No. 14 was submitted must have been completed no later than January 10, 2002. Based on this logic, the government concludes that MEB had earned and acquired the right to receive the payment in question no later than January 10, 2002. But there is no evidence that MEB was current with its payment obligations to its Lockwood contract suppliers and subcontractors as of January 10, 2002, or at any time thereafter. The government's argument ignores the terms of the Lockwood contract. Under that contract, it takes more than completed work for MEB to be entitled to payment. The government has pointed to no evidence that shows that MEB satisfied the terms of the contract in order to ever have become entitled to payment of the funds in question (or any particular portion thereof). Therefore, the

9

government has failed to prove[5] a nexus between the property levied upon and the taxpayer.[6]

## Conclusion

For the foregoing reasons, the judgment of the district court in favor of the government is REVERSED and judgment is RENDERED in favor of Capitol. The case is REMANDED to the district court for determination of attorneys' fees.

REVERSED, RENDERED, and REMANDED.

---

[5]In *Oxford Capital Corp. v. U.S.*, we noted a requirement that the government meet "a heightened standard of proof" to show the nexus between the property levied upon and the taxpayer. 211 F.3d 280, 283 (5th Cir. 2000). In this case, the heightened standard of proof is not a factor because the government has presented no evidence that MEB had a right to the withheld payment.

[6]In *Victore* the court also found that the contractor was not entitled to the withheld funds because of § 2253.071 of the Texas Government Code, which provides:

"The proceeds of a public work contract are not payable, until all costs of completion of the contract work are paid by the contractor or the contractor's surety, to a contractor who furnishes a bond required by this chapter if:
(1) the contractor abandons performance of the contract; or
(2) the contractor's right to proceed with performance of the contract is lawfully terminated by the awarding governmental entity because of the contractor's default."
Tex. Gov't Code Ann. § 2253.071(a) (Vernon 2000).

As our holding regarding the City's contractual right to withhold payment to MEB resolves this appeal, we need not address Capitol's argument that the evidence shows that MEB abandoned performance of the contract and so Capitol should prevail under *Victore* and § 2253.071(a)(1). Likewise, we need not address Capitol's arguments that, even if MEB had a right to the withheld payment, Capitol should prevail in a priority contest with the IRS based on equitable subrogation and also based on the obligatory disbursement agreement provision in § 6323(a) of the Internal Revenue Code.

10