UNITED STATES of America,
Plaintiff,

v.

Dr. James David KEY, Sr.,
et al., Defendants.

No. 3:02–CV–2326–K.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 13, 2004.

Ramona S. Notinger, US Department of Justice, Dallas, TX, for Plaintiff.

Mary M. Speidel, Codilis & Stawiarski, Houston, TX, Eric A. Zukoski, Quilling Selander Cummiskey & Lownds, Kenneth A. Thomas, Thomas & Gay, Frank David Stone, Law Office of F. David Stone, Dallas, TX, for Defendants.

Donald O. Walsh, Glast Phillips & Murray, Dallas, TX, pro se.

## MEMORANDUM OPINION AND ORDER

KINKEADE, District Judge.

Before the Court is Plaintiff United States of America's Motion for Summary Judgment. Having considered the merits of the motion, and for the reasons stated below, the motion is **GRANTED**.

## I. Background

This is a suit brought by Plaintiff United States of America ("United States") against Defendant Dr. James David Key, Sr. ("Dr. Key") for the purpose of reducing Dr. Key's tax liability to the United States to judgment. The United States alleges that Dr. Key owes the United States federal income taxes amounting to $1,551,547.12 as of June 23, 2003, plus interest and penalties thereafter, for the tax years 1983, 1987, 1988, 1989, 1991, and 1997. On January 10, 2001, Dr. Key made a request for a collection due process hearing pursuant to 26 U.S.C. § 6330. On May 28, 2002, the United States Tax Court entered an agreed order determining Dr. Key's tax liability for the years 1987, 1988, 1989, 1990, and 1991. The United States subsequently timely filed suit in this Court seeking to have Dr. Key's tax liability reduced to judgment.

The United States thereafter filed its Motion for Summary Judgment, asking the Court to enter judgment as to Dr. Key's tax liability, order the sale of several parcels of Dr. Key's real property to satisfy his tax liabilities, and determine the order in which Dr. Key's judgment creditors are to be paid, if at all.

## II. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322–25, 106 S.Ct. at 2551–54. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321–25, 106 S.Ct. at 2551–54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

## III. Dr. Key's Tax Liability

The United States argues that Dr. Key owes the United States federal income taxes for tax years 1983, 1987, 1988, 1989, 1991, and 1997, in the amount of $1,551,547.12 as of June 23, 2003, plus interest and penalties until that amount is paid.

As evidence of Dr. Key's tax liabilities, the United States has submitted a Form 4340 for each of the tax years at issue. A Form 4340 is presumptive proof of a valid assessment if the taxpayer produces no evidence to counter the presumption. *See U.S. v. McCallum*, 970 F.2d 66, 71 (5th Cir.1992). According to the Forms 4340 submitted by the United States, Dr. Key's balances for the relevant tax years as of October 28, 2002, are as follows: (1) 1983: $45,582.37; (2) 1987: $422,154.12; (3) 1988: $457,714.74; (4) 1989: $133,293.33; (5) 1991: $253,303.82; and (6) 1997: $6,007.40. Additionally, the United States presents the declaration of Leola Stehle, an interest examiner employed by the Internal Revenue Service, to establish the liability amount. In her declaration, Ms. Stehle's states that Dr. Key's tax liability for tax years 1983, 1987, 1988, 1989,

1991, and 1997 equals $1,551,547.12, through June 23, 2003.

Dr. Key disputes this amount, arguing that his tax liability should be reduced by $165,695.34 for payments he made which the United States failed to properly take into account. These alleged payments include: (1) $60,000 levied from Dr. Key's son's college savings account during 1991; (2) $55,000 levied from Dr. Key's passbook savings account at Sunbelt Savings FSB in November of 1991; (3) $10,000 levied from Dr. Key's son's account at the Air Force Federal Credit Union in December of 2002; (4) $17,500 levied from Wester Cal Mortgage Co.'s account during 2003; (5) $16,000 levied from Dr. Key's United States Air Force disability retirement checks on or about March of 2003 through the present; (6) $3,596.82 of overpaid taxes from Dr. Key's 1993 1040 tax return were levied on May 26, 2003, and applied to his 1988 tax liability; and (7) $3,598.52 of overpaid taxes from Dr. Key's 1995 1040 tax return were levied on April 28, 2003, and applied to his 1988 tax liability.

■ With regards to any payments made to reduce Dr. Key's 1991 tax liability, the decision of the Tax Court is determinative of those amounts. *See U.S. v. Estabrook,* 78 F.Supp.2d 558, 561 (N.D.Tex.1999). Even if the Court was not bound by the decision of the Tax Court, Dr. Key has not proffered sufficient summary judgment evidence to rebut the presumption of validity created by the United States' submission of the Forms 4340 showing Dr. Key's tax liabilities. With regards to the alleged payments of $60,000 and $55,000 in 1991, and $16,000 from March of 2003 through the present, Dr. Key presents only his self-serving affidavit, along with the hearsay affidavit of Mr. Larry Slayton, former Office Manager of Dr. Key's Clinic, as evidence of payment. These affidavits are not competent summary judgment evidence. *See* Fed.

R.Civ.P. 56(e). The evidence also shows that Dr. Key was given credit for $10,000 levied from the account at the Air Force Federal Credit Union, a $17,165.75 payment from the Wester Cal Mortgage Account, and the overpaid taxes amounting to $3,596.82 and $3,598.52, levied on April 28, 2003, and May 26, 2003, respectively.

Dr. Key's evidence does not counter the presumption created by the Forms 4340 submitted by the United States, and some of the evidence does not even contradict the information included in the Forms 4340. Therefore, no fact issue remains as to Dr. Key's tax liability, and the United States is entitled to summary judgment on that amount as a matter of law.

## IV. Liens on Dr. Key's Real Property

■ The Internal Revenue Code provides that once a person who owes taxes to the United States refuses a demand for such taxes, the United States shall have a lien in its favor upon all property and rights to property, real or personal, belonging to that person. *See* 26 U.S.C. § 6321. The United States may perfect its interest in real property encumbered by a tax lien by filing federal a tax lien in the real property records of the county where the property is located. *See* 26 U.S.C. § 6323(f)(1)(A)(i), (2)(A). Liens under § 6321 arise on the date that the IRS assesses unpaid taxes, applies to currently owned and after-acquired property, and continues until the taxpayer satisfies the debt. *See Texas Commerce Bank—Fort Worth, N.A. v. United States,* 896 F.2d 152, 161 (5th Cir.1990).

In order to obtain payment from Dr. Key to satisfy his tax liabilities, the United States recorded Notices of Federal Tax Lien against Dr. Key on September 27, 1991, November 21, 1991, August 12, 1993, and November 19, 1993. Those liens were refiled on January 4, 2000, and January 11,

2001. Pursuant to those filings, the United States alleges that three properties are encumbered by tax liens:

1. A track of land situated at 5912 Averill Way, Dallas, Texas 75225; and situated in the JOHN HOWELL SURVEY, ABSTRACT NO. 580, a part of City Block No. 5622, City of Dallas, Dallas County, Texas (the "Key Residence");

2. Lot 11 in Block "M", located and situated in the replat of Oakbrook Estates, an addition to the City of Farmers Branch, Dallas County, Texas, according to the map thereof, recorded in Volume 78141, Page 819, map records of Dallas County, Texas; located at 14502 Park Lake Court in Farmers Branch, Dallas County, Texas (the "Park Lake Court House"); and

3. Lots 4,5,6,7,8,9, and 10 in Block 42/3162 of DALLAS LAND & LOAN COMPANY'S ADDITION TO OAK CLIFF, an Addition to the City of Dallas, Texas, County of Dallas, also known as 315 Sunset Avenue and 325 Sunset Avenue in Dallas, Texas ("Key's Medical Business Property").

The United States seeks to foreclose its liens, and requests that the Court order the sale of Dr. Key's real properties to satisfy his tax liability.

Dr. Key disputes the United States' tax lien on the Park Lake Court House, claiming that (1) the government has not provided sufficient evidence to prove that he conveyed the Park Lake Court House fraudulently, thus making its claims untimely; and (2) the federal tax liens filed by the government are invalid because the Park Lake Court House is held in trust.

Dr. Key states that the United States is attempting to prove that he transferred the Park Lake Court House to a trust in order to defeat creditor's claims, and presents evidence that the transfer was not fraudulent. However, the United States responds that Dr. Key's argument regarding the United States' failure to show fraudulent transfer is irrelevant, claiming that the tax liens encumbered the Park Lake Court House before any transfer took place.

According to the evidence before the Court, the United States filed the first tax lien on "all property and rights to property" of Dr. Key on September 19, 1991. While Dr. Key argues that he transferred the Park Lake Court House from himself to the James David Key Trust on September 2, 1988, that transfer was not recorded in the deed until November 8, 1993, well after the federal tax liens were filed. The Court looks to state law to determine the extent of a taxpayer's interest in property encumbered by a federal tax lien. *See United States v. Creamer Indust., Inc.*, 349 F.2d 625, 628 (5th Cir. 1965). Under Texas law, a conveyance of real property is void as to a creditor, unless the instrument has been filed of record as the law requires. *See* Tex. Prop. Code § 13.001(a). As the transfer of the property Dr. Key alleges occurred on September 2, 1988 is void as to the United States' tax liens, this Court need not consider whether the transfer of the property was fraudulent or not. Whatever the case, the property was encumbered by the United States' tax liens when the transfer was recorded on November 8, 1993.

Even more importantly, the evidence shows that Dr. Key is currently the record owner of the Park Lake Court House, meaning that even if the liens did not encumber the property in 1991, they currently attach to the property as after-acquired property. By a quitclaim deed dated and recorded on December 31, 1991, the James David Key Family Trust purported to transfer the Park Lake Court House to Cynthia Lynne Key and Amy Janet Key, Dr. Key's daughters. In turn,

by quitclaim deeds dated January 27, 2003 and January 30, 2003, and recorded on January 31, 2003 and March 19, 2003, respectively, Dr. Key's daughters purported to transfer the Park Lake Court House back to Dr. Key, individually.

The tax liens were originally filed before any lawful transfer of the Park Lake Court House took place, and in any event, the liens now attach to the Park Lake Court House as property owned individually by Dr. Key. Additionally, considering the United States' evidence in support of its contention that it has filed tax liens on the Key Residence and Dr. Key's Medical Business Property, and Dr. Key's failure to present any evidence to the contrary, the Court finds that the United States' tax liens on those properties are valid, as well. Therefore, the United States is entitled to summary judgment as a matter of law that its tax liens on the Key Residence, the Park Lake Court House, and Dr. Key's Medical Property are valid.

## V. The Soldier's and Sailor's Civil Relief Act of 1940

In his final attempt at creating a fact issue as to whether the United States' tax liens were valid and as to the amount of his tax liability, Dr. Key relies on the Soldier's and Sailor's Civil Relief Act of 1940, 50 App. U.S.C. § 501 et seq. ("SSCRA"). Specifically, Dr. Key directs the Court to the SSCRA for the proposition that the United States cannot file a lien against a service man during active duty, and active duty medical hold status for six months thereafter. Dr. Key states that he served in Operation Desert Storm from January of 1991 through April of 1994, and therefore claims that the United States was prohibited from filing any tax liens on his property during that time. However, Dr. Key fails to cite any provision of the SSCRA or any other law which supports this argument, and the Court could find none. Therefore, the United States' tax liens on Dr. Key's properties are valid.

Dr. Key also states that the SSCRA prohibits the imposition of interest and penalties on taxes during the relevant period of active duty. However, Dr. Key presented these arguments to the Tax Court, which took them into account in making its final determination as to Dr. Key's tax liability. As stated above, Dr. Key cannot relitigate those issues here. *See Estabrook*, 78 F.Supp.2d at 561. Even if the Court did consider his argument, the evidence shows that Dr. Key has already been given penalty and interest abatements during his alleged periods of military service.

Therefore, the SSCRA does not affect Dr. Key's tax liability amounts, or the validity of the United States' tax liens on Dr. Key's property, in any way.

## VI. Dr. Key's Judgment Creditors

In his First Amended Answer to the United States' Motion for Summary Judgment, Dr. Key states that "judgment creditors of Dr. Key have no claims to proceeds from the sale of any of Dr. Key's property." Unfortunately for Dr. Key, despite making that argument in a section-heading in his pleading, nowhere in the document does he mention what his judgment creditors are entitled to or not entitled to, let alone present evidence to the Court on the issue.

The United States, however, presents evidence that Donald Walsh, Sarasota, Inc., and CompHealth, Inc. are judgment creditors of Dr. Key's. First, the United States submits a declaration by Mr. Walsh stating that as of June 1, 2003, he is entitled to a judgment of $134,724.19 from Dr. Key, at an interest rate of 10% per annum or $35.42 per day. Mr. Walsh recorded the judgment lien on April 28, 1993. The United States also submits the declaration

of Eric A. Zukoski, a representative of Sarasota, Inc., stating that as of June 1, 2003, Sarasota, Inc. is entitled to a judgment of $7,959,376.89 from Dr. Key, at an interest rate of 10% per annum or $1,211.75 per diem. Sarasota, Inc. recorded the judgment on February 22, 1996. Finally, the United States submits the declaration of F. David Stone, a representative of CompHealth, Inc., stating that as of June 1, 2003, CompHealth, Inc. is entitled to a judgment of $56,022.39 from Dr. Key, at an interest rate of 18% per annum or $20.80 per diem. CompHealth, Inc. recorded the judgment on January 8, 2003.

Dr. Key does not dispute this evidence, which is properly presented to the Court. Therefore, the Court finds that the United States is entitled to summary judgment as a matter of law that the above-mentioned judgment creditors shall receive any remaining proceeds from the sale of Dr. Key's property, after mortgages, Dr. Key's tax liability, and other costs of sale are paid. Among the judgment creditors, because of the place in time that each judgment lien was recorded, Mr. Walsh has first priority, Sarasota, Inc. second priority, and CompHealth, Inc. third priority.

## VII. Conclusion

For the reasons stated above, the United States' Motion for Summary Judgment against Dr. Key is **GRANTED**. Judgment shall issue that Dr. Key is liable for $1,551,547.12 in personal income taxes owed to the United States, plus interest and penalties until that amount is paid, and that Dr. Key's real estate be sold to satisfy the amount of the tax liability.

**SO ORDERED.**

### *JUDGMENT*

This Judgment is entered pursuant to the Court's Memorandum Opinion and Order also entered this day, in which the Court granted Plaintiff United States of America's ("United States") Motion for Summary Judgment, finding that the Defendant Dr. James David Key, Sr. ("Dr. Key") owes the United States $1,551,547.12 in personal federal income taxes, and ordering the sale of Dr. Key's real property on which the United States holds federal tax liens.

It is therefore, ORDERED, ADJUDGED and DECREED that the Dr. Key owes the United States $1,551,547.12 in personal income taxes, plus interest and penalties until the amount is paid in full, and that the following properties of Dr. Key be sold to satisfy the tax liabilities:

1. A track of land situated at 5912 Averill Way, Dallas, Texas 75225; and situated in the JOHN HOWELL SURVEY, ABSTRACT NO. 580, a part of City Block No. 5622, City of Dallas, Dallas County, Texas ("the Key Residence");

2. Lot 11 in Block "M", located and situated in the replat of Oakbrook Estates, an addition to the City of Farmers Branch, Dallas County, Texas, according to the map thereof, recorded in Volume 78141, Page 819, map records of Dallas County, Texas; located at 14502 park Lake Court in Farmers Branch, Dallas County, Texas ("the Park Lake Court House"); and

3. Lots 4,5,6,7,8,9, and 10 in Block 42/3162 of DALLAS LAND & LOAN COMPANY'S ADDITION TO OAK CLIFF, an Addition to the City of Dallas, Texas, County of Dallas, also known as 315 Sunset Avenue and 325 Sunset Avenue in Dallas, Texas ("the Key Medical Business Property").

The proceeds from the properties named above shall be applied to satisfy Dr. Key's tax liabilities after payment of reasonable costs of sale, the mortgage debts owed to Defendant Washington Mutual Bank, FA on the Key Residence and the Park Lake

Court House, any ad valorem taxes owed to the County of Dallas and related ad valorem taxing authorities.

Additionally, to the extent that any proceeds from the sale of the properties remain after the mortgages and Dr. Key's tax liabilities are paid in full, the proceeds should be distributed to the judgment lien creditors in the following priority:

1. Donald Walsh, for $134,724.19 as of June 1, 2003, at an interest rate of 10% per annum or $35.42 per day;

2. Sarasota, Inc., for $7,959,376.89 as of June 1, 2003, at an interest rate of 10% per annum or $1,211.75 per diem; and

3. CompHealth, Inc., for $56,022.39 as of June 1, 2003, at an interest rate of 18% per annum or $20.80 per diem.

SO ORDERED.